366 So.2d 19 (1978)
Wardell RILEY, Appellant,
v.
STATE of Florida, Appellee.
No. 49666.
Supreme Court of Florida.
October 26, 1978.
Rehearing Denied January 30, 1979.
*20 Bennett H. Brummer, Public Defender and Paul Morris, Asst. Public Defender, Miami, for appellant.
Robert L. Shevin, Atty. Gen. and George R. Georgieff, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant was tried by jury and convicted on two counts of first degree murder and one count of assault with intent to commit first degree murder. An advisory sentence of death was recommended by the jury and imposed by the trial judge as to one of the murder counts, vesting jurisdiction for a review of all convictions and sentences here.[1]
According to the evidence at appellant's trial, he and an unidentified person entered the business establishment at which appellant was employed, toward the end of a normal workday, for the purpose of robbing it. The only persons then present were the father and son co-owners of the business, and the manager. All three were threatened with pistols, forced to lie on the floor, bound, gagged, and then shot in the head. The son co-owner survived, and he was able to describe these events and later testify as *21 to appellant's participation. Appellant took the witness stand to deny complicity, but the jury disbelieved him. The jury recommended a sentence of death for the father's killing and life for the manager's. The trial judge sentenced appellant in accordance with these recommendations, and he imposed a 15 year sentence for the felonious assault on the son.
No challenge is made here with respect to appellant's convictions, save one regarding jury selection. Our self-imposed responsibility however, includes a review of the entire record of the trial for errors which might require a new trial. We have found none.
With respect to the voir dire examination of prospective jurors, appellant contends that the trial court systematically excluded persons opposed to capital punishment and thereby deprived him of a random selection of a cross section of the community. The argument is made that defendants in capital cases are entitled to have on the jury which determines guilt or innocence persons who are unalterably opposed to the death penalty, because they would represent a definable cross section of the community. It is suggested that jurors for the first phase of our bifurcated proceeding in capital cases would serve in that proceeding only, to determine the accused's guilt or innocence, and that alternate jurors who qualify under the standard prescribed in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), would serve either with them or in their stead for the second, or sentence-advisory, phase of trial. While this suggestion is novel, we have given it full consideration and find no compulsion in law or logic to so structure capital case trials. We reject appellant's contention that his jury was impermissibly constituted.
Appellant's principal argument to us is that a death sentence is not warranted for his crime, first because the trial judge considered matters outside the list of enumerated factors prescribed by Section 921.141, Florida Statutes (1975), and second because the statutory mitigating circumstances outweigh in significance the statutory aggravating factors.
In his written findings, the trial judge described six aggravating circumstances and one mitigating circumstance. Two of the aggravating circumstances clearly must be disregarded as not having been listed in Section 921.141(5), Florida Statutes (1975).[2] A third aggravating circumstance, that the father's murder was committed in a "terribly cruel, ruthless and heinous manner," constitutes a defective application of the statutory factor concerning heinous and atrocious murders. We have previously limited this statutorily-prescribed factor to those capital felonies which are "accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim."[3] Here the atrocity described by the prosecutor and apparently accepted by the trial judge was the son's having to see his father's execution death. There was nothing atrocious (for death penalty purposes) done to the victim, however, who died instantaneously from a gunshot in the head. As to this aspect, the case is similar to Cooper v. State, 336 So.2d 1133 (Fla. 1976), where we ruled that a like killing was not heinous and atrocious within the meaning of Section 921.141(5)(h).
A fourth and fifth finding were that the murder was committed for pecuniary gain and during the course of a robbery, invoking Sections 921.141(5)(d) and (f). These findings are duplicative in this case, and should constitute only one aggravating circumstance. Provence v. State, 337 So.2d 783, 786 (1976).
The final aggravating circumstance identified by the trial judge was that the murder *22 was committed to eliminate a witness and thereby avoid lawful arrest. Section 921.141(5)(e). Appellant urges us to limit this factor to cases where a police officer or other apprehending official is killed. He suggests that unless we do so, every murder could be characterized as an attempt to eliminate a witness, causing another automatic cumulation of factors. The state argues more narrowly, from the evidence in this case, that the only possible motive for the killing was to eliminate an identification witness.
The record supports the state's view, as the facts admit of only one interpretation. The victim, who well knew and could identify appellant, was immobilized and rendered helpless. He was then executed after one of the perpetrators expressed a concern for subsequent identification. Plainly appellant killed to avoid identification and arrest. Appellant concedes this view of the evidence in his brief.
Since the facts show this to be an execution-type killing to avoid lawful arrest, we necessarily reach the broader issue of whether the language of the applicable provision encompasses the murder of a witness to a crime as well as law enforcement personnel.[4] We hold that it does. See Sullivan v. State, 303 So.2d 632 (Fla. 1974).[5] We caution, however, that the mere fact of a death is not enough to invoke this factor when the victim is not a law enforcement official. Proof of the requisite intent to avoid arrest and detection must be very strong in these cases. Here, of course, it was.
The one mitigating factor found to exist in this case was appellant's lack of any significant history of prior criminal activity. All other mitigating factors in Section 921.141(6) were properly found to be absent.
Since the trial judge improperly considered aggravating factors outside the statutory list and there was present at least one mitigating circumstance, we must remand this case for reconsideration of the sentence by the trial judge. Elledge v. State, 346 So.2d 998 (Fla. 1977).
Appellant's convictions are affirmed, as are his life and 15 year sentences. The case is remanded, however, for the sole purpose of allowing the trial judge to reconsider the imposition of the death sentence for the murder of Peter Enea, Sr., in accordance with Section 921.141 as construed in this opinion.
It is so ordered.
ENGLAND, C.J., and SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
ADKINS and OVERTON, JJ., concur with that part of majority opinion which affirms appellant's conviction, but dissent from that part which orders a remand for resentencing.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
I respectfully dissent from the majority opinion. A careful examination of the testimony demonstrates an insufficient factual basis for a finding of guilt beyond and to the exclusion of a reasonable doubt.
The facts clearly established are that Peter Enea, Sr. and Robert Lisenby were shot to death with pistols during the course of a robbery and that Peter Enea, Jr. was shot in the head but survived. Eyewitness testimony was offered by Peter Enea, Jr. He said that the crimes were committed by appellant Wardell Riley and an unidentified man who had ridden on Riley's truck when it returned to the Sunset Bottling Plant shortly after 6:00 p.m. on September 15, 1975. Consideration of the entire evidence raises a question of whether the State's only eyewitness could have mistaken some other person for Riley. All other testimony *23 was circumstantial and often conflicting. There was not the quantum of proof required for conviction of crimes.
There was conflicting evidence as to when appellant and other drivers returned, checked in and left the Plant. Barry Rainie, one of the drivers, testified he left at 6:30 p.m., that all the victims were alive and that no automobiles were in the parking lot where appellant's wife, Martha Riley, had parked with their two small children to wait for appellant. After being shown records kept by Peter Enea, Jr. that he had left at 5:15 p.m., he changed his testimony, but later reaffirmed his statement that he left at 6:30 p.m. and that no one was there except the victims of the crime. A neighbor of the Rileys, Mrs. Blue, saw them arrive at home, over three miles from the scene of the crimes, in their usual manner only fifteen minutes later, at 6:45 p.m. The Rileys had one car. Mrs. Riley testified that her husband was driving at the time Mrs. Blue saw them exit from the car at 6:45 p.m. Riley testified that he then left and was away from the house for less than one hour, during which time he was playing basketball at a park. The Rileys went to the dog track that night and Mrs. Blue testified she kept the Riley children until their return. She said the family acted normally, with no indication of unusual circumstances.
It seems incredible that anyone would have their spouse and children to wait outside, enter the premises and commit a robbery and mass murder as the State alleged here. It becomes harder to believe when we examine the proof that appellant had attended college and was applying for work as a police officer. Also, another driver testified that appellant was pleasant and friendly minutes before the alleged crimes were committed.
When the police arrived at the scene of the crimes Peter Enea, Jr., suffering from the head wound, gave them a city personnel identification card of appellant and the license plate number of appellant's car, although his father and plant manager, Robert Lisenby, were dying. He said appellant had ransacked the file and put his hands on the desk and telephone. Appellant's finger-prints were not found at those places by police. Enea said appellant fired pistols, shooting him, his father and their manager. Appellant testified police made scientific tests within a few hours to determine whether he had fired a pistol. He never heard from the tests, no such evidence was offered by the State and the testimony was not rebutted.
In appellant's home, the work pants and shoes worn by appellant on the day of the crime were seized and a small quantity of human blood was found on them. The type could not be determined and the amount of time the blood had been there could not be determined. It was common practice to wear the same pants more than one day without laundering them. Appellant and other drivers, including State witnesses, said all drivers frequently cut their hands on broken bottles while working. Blood would naturally be on their clothing.
No weapons were found in appellant's home. Some .25 caliber ammunition was found which apparently would have fit the weapon owned by Peter Enea, Jr., and with which he was shot. Appellant and his wife claimed that the ammunition was kept so that the gun powder could be used for household purposes. No other property linking appellant to the crime scene was found.
There is much other conflicting and vaguely related evidence, but it simply does not constitute a sufficient basis to overcome the presumption of innocence. I will not consent to conviction and execution of anyone on such weak evidence.
I do not know whether the appellant is guilty. Having twice served as foreman of twelve member juries, I agree with my colleagues that factual determinations of juries should generally not be disturbed. In this case, however, I am convinced the quantum of proof for conviction is not shown in the record. I do not think a jury *24 of reasonable men[1] could reach a verdict of guilty without misunderstanding the evidence or the law. Under these circumstances the trial court's adjudication of guilt should be quashed.
I dissent.
NOTES
[1] Our jurisdiction to review the death sentence is found in Art. V, § 3(b)(1), Fla. Const., and § 921.141(4), Fla. Stat. (1975). Our review of other convictions and sentences arising from the same trial is grounded in the sound administration of the judicial system of the state. See Huckaby v. State, 343 So.2d 29 (Fla. 1977).
[2] The court found (1) that Riley had shown no remorse and (2) that the length of his premeditation for the crime was great.
[3] State v. Dixon, 233 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). See also Tedder v. State, 322 So.2d 908 (Fla. 1975).
[4] This subsection provides: "The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody."
[5] If the death penalty is to be successful as a deterrent to murder, as some believe it will, its imposition in witness execution cases such as this may save the lives of future robbery victims.
[1] Griffis v. Hill, 230 So.2d 143 (Fla. 1970). Tibbs v. State, 337 So.2d 788, 792 (Fla. 1976), (Boyd, J., Concurring Specially).