368 So.2d 1278 (1979)
Antonio MENENDEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 49294.
Supreme Court of Florida.
January 25, 1979.
Bennett H. Brummer, Public Defender, and Julian S. Mack, Warren S. Schwartz and Daniel Velayos-Laredo, Asst. Public Defenders, Miami, for appellant.
Jim Smith, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., Tallahassee, for appellee.
*1279 ENGLAND, Chief Justice.
This case is here on direct appeal of a sentence of death imposed on Antonio Menendez by a trial judge, following an advisory sentence of death recommended by a jury. We have jurisdiction.[1]
The following sequence of events led to Menendez's arrest and conviction. A customer walked into a jewelry store and saw a man emptying the store's safe. The man took a gun from his jacket and grabbed for the customer, but she eluded his grasp and ran out of the store. Soon thereafter the same man was seen by the customer and her husband leaving the store and speeding away in a red Camaro with New York license tags. Both the husband and wife later gave police similar descriptions of the man they had seen. A police officer soon arrived at the store and found the dead body of the jeweler.
At 2:30 a.m., the officer received word that a red Camaro had been seen at an apartment complex. He proceeded to the area and noted that although the car had a Florida license tag, it bore a New York inspection sticker. The officer the went into the complex and questioned the manager, who said that he thought the Camaro belonged to the resident of a particular apartment whose description matched that of the man seen at the jewelry store. The manager also stated that this resident had been seen transferring various goods from the trunk of the red Camaro to another vehicle earlier. The officer went to the door of the apartment, knocked, and announced both in English and Spanish that he was a police officer.
After about five minutes, during which time the officer heard shuffling and sounds of movement inside the apartment, the door was opened about two inches to reveal an individual holding a pistol in his hand. The officer immediately pushed the door fully open, upon which the person who had opened the door dropped the pistol. Across the room the officer saw another man who fit the suspect's description and numerous items of merchandise which later proved to have been taken from the jewelry store.
The officer arrested the persons in the apartment and confiscated both the weapons and merchandise. The man seated across the room was Menendez, who was later identified in a lineup at the police station by the woman who had witnessed the jewelry store robbery.
After a trial by jury, Menendez was convicted of robbing the jewelry store and murdering the store owner. He was sentenced to life imprisonment for the robbery and to death for the murder. In seeking to overturn his convictions and sentences, Menendez essentially argues three points:
1. That the contraband seized from the apartment should not have been admitted into evidence because it was obtained by means of an illegal search;
2. That he was prejudiced by a failure to sever his trial from that of the co-defendant; and
3. That his death sentence was improper even if his conviction was valid.
1. Search and seizure. The trial judge did not err in allowing the seized items to be admitted into evidence. There was absolutely nothing improper in the police officer's knocking on the door of Menedez's apartment and announcing himself, regardless of the time of day. When the officer saw that a person in the doorway held a gun, he acted most reasonably in attempting to protect himself by quickly pushing the door open to its full extent, especially in light of the information he already possessed, which suggested that the resident of the apartment may have committed murder.[2] With the door fully open, the contraband was lawfully within the officer's view, and it is immaterial that he could not have effected a valid arrest without *1280 a warrant at the time he first knocked at the apartment door.[3] Once the door was opened, there was probable cause to arrest the persons in the apartment without a warrant and to seize the contraband which was in plain view.[4]
2. Severance. The trial judge exercised her discretion during the course of trial by refusing to sever Menendez's trial from that of the co-defendant. There was only one attempt to sever Menendez's and his co-defendant's trial, however. That occurred when the co-defendant's counsel announced in his opening statement that his defense would be designed to prove that Menendez, not the co-defendant, had committed the robbery and murder.[5] Menendez's counsel promptly moved for a mistrial and for severance. While both of these requests were denied, the trial judge nonetheless expressed her concern as to the direction of the joint trial, saying:
I am frank to say I am awfully worried about the way things are heading.
The trial court then expressly cautioned the jury to disregard the statement of counsel and to base their verdict solely on the evidence which would be produced during the course of trial.
During the evidentiary phase of the trial, counsel for the co-defendant offered no evidence to support his earlier assertion that Menendez had committed the crimes, and counsel for Menendez made no further request for severance. The only other reference to the co-defendant's reliance on Menendez's guilt came during closing argument by counsel for the co-defendant, when he argued that the evidence against Menendez was overwhelming and that "the opposite is true as to the co-defendant." Menendez was convicted of robbery and murder, but his co-defendant was acquitted of both.
The American Bar Association has promulgated standards with respect to joinder and severance dealing in a general way with the problem of severance which was raised in this case.[6] The thrust of the association's recommendation, which is completely consistent with our rule on severance,[7] is that severance should be granted liberally whenever potential prejudice is likely to arise in the course of trial. It is immaterial whether any of us might have granted a severance; the test is whether the trial judge abused her discretion at the time she made her ruling.[8]
We have reviewed the entire record to determine whether the two statements of the co-defendant's counsel so prejudiced the determination of Menendez's innocence or guilt that the same jury might have reached a different result had the two statements not been made. It is impossible to conclude on this record that Menendez was prejudiced in the least.[9] The evidence is overwhelming that Menendez was the individual who had been present in the store at the time the shopkeeper was killed, was seen in the act of robbing the safe, and later emerged to flee in a red Camaro. While there was no evidence as to who may have fired the fatal shot, it was also undisputed that Menendez held a gun in his hand at the time he was seen in the store, at or near the time of death. His co-defendant was at no time linked to any of the events *1281 which transpired at the jewelry store. This, then, is not a case in which the conviction was based solely on circumstantial evidence or inconclusive evidence, or where there is any possibility of misidentification between two perpetrators. We conclude that the trial judge did not abuse her discretion in refusing to sever Menendez's trial from that of his co-defendant.[10]
3. Death sentence.[11] The state has conceded that three of the seven aggravating circumstances found by the trial judge should not have been considered, since they are outside the list of factors enumerated in our death penalty statute.[12] These findings are stricken.[13] The state also agrees that a fourth aggravating circumstance found by the trial judge is properly consolidated with another. The only mitigating circumstance in the case is that Menendez had no significant history of prior criminal activity.[14]
With the findings of the trial judge appropriately modified, the state still argues that the three aggravating circumstances outweigh the one mitigating circumstance and warrant our affirmance of the death sentence. The three aggravating factors, as stated by the trial judge, are:
1. That the death of Arturo Gargaro, age 69, occured [sic] while the defendant was engaged in the commission of a Robbery of Mr. Gargaro's jewelry store and that as such, the crime was for pecuniary gain.[15]
2. That the crime was especially heinous, atrocious or cruel in that the placement of the fatal bullet indicates to the court that the arms of the victim were in a raised and submissive position at the time of the administration of the fatal shot.[16]
4. That the Murder was committed for the purpose of eliminating the one eye-witness [sic] to the crime and thereby avoiding or preventing a lawful arrest.[17]
It is clear that this murder was committed during the course of a robbery. It is not so clear that the murder was "especially" heinous, atrocious, or cruel, as is contemplated in the statute. The storekeeper *1282 was shot twice and died. Although his arms may have been in a submissive position at the time he was shot (a fact which is subject to other reasonable interpretations), there is nothing to set his execution murder "apart from the norm of capital felonies."[18]
There is also considerable doubt that this murder was committed for the purpose of avoiding arrest within the contemplation of our statute. The state urges (with some logic) that any murder committed by means of a pistol fitted with a silencer indicates a motivation to avoid arrest and detection. The presumption accorded the instrument of murder by this reasoning, however, carries us too far. Were this argument accepted, then the perpetration of murder with a knife would similarly add an aggravating circumstance to the life-or-death equation, since it is less detectable than a firearm. This mechanical application of the statute would divert the life-and-death choice away from the nature of the defendant and the deed, as the statute seems to require.[19] In Riley v. State, 366 So.2d 19 (Fla. 1978), we held that an intent to avoid arrest is not present, at least when the victim is not a law enforcement officer, unless it is clearly shown that the dominant or only motive for the murder was the elimination of witnesses. Here, unlike Riley, we do not know what events preceded the actual killing; we only know that a weapon was brought to the scene which, if used, would minimize detection. We cannot assume Menendez's motive; the burden was on the state to prove it.
There is, therefore, only one properly found aggravating circumstance and one mitigating circumstance. Since the trial judge has committed error in considering matters outside the permissible range of legal standards set by the statute, and because it is impossible for us to evaluate the weight given by the trial judge to those factors which were proper to consider in imposing the death penalty, we can only vacate the sentence of death and remand the case for resentencing.
Menendez has not demonstrated any error in the instructions given to the jury[20] or the evidence it considered in making its recommendation. Moreover, our independent review of the record reveals no error,[21] so that it is not essential that a new jury be convened.[22] Nor is it necessary to disturb Menendez's conviction and sentence for robbery, as both are fully supported by the record and by the law.
Accordingly, Menendez's convictions for robbery and murder, and his life sentence for robbery, are affirmed. The sentence of death for his murder conviction is vacated, and the case is remanded for resentencing by the trial court.
ADKINS, BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.; § 921.141(4), Fla. Stat. (1975).
[2] The state asserts that there exist other facts relevant to the seizure of this evidence which are contained in affidavits not admitted into evidence by the trial judge. We denied a motion to supplement the record, however, and therefore do not consider those facts.
[3] See State v. Ashby, 245 So.2d 225, 227-28 (Fla. 1971).
[4] See United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).
[5] We note that no motion had been made prior to trial, as is normally the preferred practice in Florida. This is not determinative, however, since our rule contemplates a motion during trial as well as before trial. Fla.R.Crim.P. 3.152(b)(1).
[6] ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance § 2.3(b)(ii) (1968).
[7] The committee note that accompanies our rule indicates that it is based on ABA Standard 2.3(b). 33 Fla. Stat. Ann. 195 (1975).
[8] See, e.g., Roberts v. State, 164 So.2d 817, 821-22 (Fla. 1964).
[9] We cannot, of course, assume that the jury ignored the court's instruction to disregard counsel's opening remarks.
[10] Menendez argues as an independent ground on which to reverse his conviction that the trial judge repeatedly advised the jury that particular evidence introduced by the state was admissible only as to Menendez and not as to his co-defendant. These cautionary instructions were undoubtedly prompted by the co-defendant's early requests for protection against trial prejudice that might otherwise result from the introduction and presentation of evidence connected only to Menendez's participation in the crimes. There was nothing improper in these evidentiary rulings by the trial judge. In any event, our review is barred by the failure of Menendez to enter a contemporaneous objection, since these instructions did not constitute "fundamental error" in the trial proceeding. Cf. Clark v. State, 363 So.2d 331 (Fla. 1978).
[11] Menendez's challenge to the death penalty statute based on Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), was recently resolved adversely to his position in Songer v. State, 365 So.2d 696 (Fla. 1978) (on rehearing).
[12] § 921.141(5), Fla. Stat. (1975). The improper findings were:

5. That the defendant looted the body of his victim and then proceeded to stand over his victim's lifeless body as he proceeded to pillage the contents of the store safe.
6. That when the defendant was discovered in the act of the commission of this crime he pointed his murderous weapon at a defenseless young woman who saved herself only by flight.
7. This court has observed the demeanor and the action of the defendant throughout this entire trial and has not observed one scintilla of remorse displayed, indicating full-well [sic] to this court that the death penalty is the proper punishment to be imposed in this particular case.
[13] Elledge v. State, 346 So.2d 998, 1002-03 (Fla. 1977).
[14] § 921.141(6)(a), Fla. Stat. (1975).
[15] § 921.141(5)(d) and (f), Fla. Stat. (1975). The trial judge was correct in considering the fact that the murder occurred during the course of a robbery and for pecuniary gain as a single aggravating circumstance. Provence v. State, 337 So.2d 783, 786 (Fla. 1976).
[16] § 921.141(5)(h), Fla. Stat. (1975).
[17] § 921.141(5)(e), Fla. Stat. (1975). This circumstance is arguably supported by the fact that Menendez had used a gun fitted with a silencer.
[18] State v. Dixon, 283 So.2d 1, 9 (Fla. 1973). Compare the facts of this murder with those in Tedder v. State, 322 So.2d 908 (Fla. 1975).
[19] Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
[20] Menendez's contention that the sentencing jury should have been instructed as to the standard of proof required to establish mitigating circumstances, and as to the standard by which aggravating and mitigating factors are to be weighed, comes too late. No request for such an instruction was offered to the trial court, and in fact, Menendez offered no evidence in mitigation at the sentencing hearing. Under these circumstances, we will not pass upon an alleged error in the instructions when the issue is raised for the first time on appeal.
[21] There is no merit in Menendez's contention that the state should have been required to provide defense counsel with advance notice of the aggravating factors on which it intended to rely. See Spinkellink v. Wainwright, 578 F.2d 582, 609 (5th Cir.1978).
[22] See Elledge v. State, 346 So.2d 998, 1002-03 (Fla. 1977).