430 So.2d 491 (1983)
Nathaniel DEAN, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-937.
District Court of Appeal of Florida, Third District.
April 5, 1983.
Rehearing Denied May 11, 1983.
*492 Bennett H. Brummer, Public Defender and Michael A. Rosen, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., Janet Reno, State Atty. and Anthony C. Musto, Asst. State Atty., for appellee.
Before BARKDULL, HUBBART and FERGUSON, JJ.
PER CURIAM.
This is an appeal from a series of criminal convictions and sentences entered below for the crimes of conspiracy and grand larceny. The defendant Nathaniel Dean raises a number of contentions on this appeal in an effort to upset these convictions and sentences. After a thorough and painstaking review of the record and applicable law, we have concluded that there is no merit to any of these contentions, and, accordingly, we affirm.
First, the defendant contends that the trial court committed reversible error in refusing to allow his counsel the right to make the concluding argument before the jury as required by Fla.R.Crim.P. 3.250.[1] We cannot agree. The state waived any argument before the jury in this cause and prior thereto the defendant's counsel was allowed to make a full and complete argument before the jury. Moreover, the state's waiver addressed to the court ["I think I can save the court some time. The evidence speaks for itself. We rest."] cannot legitimately be construed, as urged, as an indirect jury argument which required a rebuttal by defense counsel. Menard v. State, 427 So.2d 399 (Fla. 4th DCA 1983). Even if we were to construe the state's waiver as an oblique one sentence jury argument, the error, if any, in not allowing a reply to so fleeting a comment can hardly be considered a reversible error. See Palmes v. State, 397 So.2d 648, 653-54 (Fla. 1981), pet. for cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981); §§ 59.041, 924.33, Fla. Stat. (1981).
Second, the defendant contends that the trial court committed reversible error in denying his motions for severance of defendants so as to be tried separately from his co-defendant Nimrod Harmon. We cannot agree. The evidence of guilt against the defendant Dean was so overwhelming that his otherwise proper joinder with the co-defendant Harmon under Fla.R.Crim.P. 3.150(b) could have had no real impact on the outcome of this case and, therefore, a severance of defendants was not called for under Fla.R.Crim.P. 3.152(b). True, the co-defendant's counsel did assert the defendant Dean's guilt in the co-defendant's opening statement and closing argument to the jury, but this added little or nothing to the already powerful case against the defendant Dean, a case so strong that no real defense was ever marshaled below against it. As such, we are unwilling to upset these convictions based on the subject severance issue. Menendez v. State, 368 So.2d 1278 (Fla. 1979). Moreover, the defendant's companion hearsay point has no merit. Tresvant v. State, 396 So.2d 733 (Fla. 3d DCA), pet. for review denied, 408 So.2d 1096 (Fla. 1981).
Third, the defendant contends that the trial court committed reversible error in denying, on grounds of untimeliness, a particular defense requested jury instruction. We cannot agree. The requested charge was not submitted at the charge conference below nor within the additional time allowed by the court to submit such a request. Instead, the request was made after final arguments to the jury and just before the jury charge; as such, the request was untimely under Fla.R.Crim.P. 3.380(c) and was properly denied on that ground alone. Beyond that, the defendant makes no contention that he was in any way prejudiced by the failure to give the requested charge; indeed, we find no prejudice is shown on this record in view of the trial court's more than adequate jury instructions which, in effect, covered the substance of the requested *493 charge. See Lowman v. State, 353 So.2d 652, 653 (Fla. 3d DCA 1977).
Finally, the defendant contends that the trial court committed reversible error in denying the defendant's pre-trial motion to suppress certain evidence obtained pursuant to a subpoena duces tecum. We have no trouble in rejecting this contention as the defendant clearly had no "standing" to move to suppress the evidence herein. Indeed, the defendant's pre-trial motion to suppress contains no factual or legal allegations of any kind that the defendant had "standing" in this case to object to the fruits of the subject subpoena. [R. 99-100]. When the state challenged the lack of such "standing" at the hearing below on the motion to suppress, the defendant orally argued to the court that his "standing" herein was based entirely on the fact that he was the chief executive officer of the non-profit corporation against which the subpoena was issued; no other basis for "standing" was urged below. [R. 43-45]. Plainly, the trial court was correct in rejecting this showing of "standing" because a corporate official can never, by virtue of his office alone, derive "standing" to object to a subpoena which directs, as here, the production of corporate books and records. United States v. Bush, 582 F.2d 1016 (5th Cir.1978); United States v. Britt, 508 F.2d 1052 (5th Cir.1975); 3 W. LaFave, Search and Seizure § 11.3 at 565-66 (1978). Moreover, the defendant made no contention below and, in essence, makes no contention now that his "standing" rests on some other valid legal basis. The trial court, then, had no alternative but to deny the motion to suppress, for lack of "standing," and was not required to take testimony on the legal merits of the motion to suppress.
Beyond that, we think there are abundant other grounds for rejecting the defendant's suppression point herein. The pre-trial motion to suppress was patently defective on its face and was, therefore, subject to summary denial on that basis alone. Besides failing to contain any allegations whatever concerning the defendant's "standing," the motion fails to state with any particularity the legal grounds or legal reasons upon which the motion was based as required by Fla.R.Crim.P. 3.190(h)(1), (2). The motion merely alleges in conclusory terms that "the form and manner of [s]ervice of said subpoena were contrary to law, therefore the aforesaid seizure was illegal" [R. 99], a ground or reason so general and vague as to constitute no ground or reason at all, even when combined with the motion's bare-boned factual recital. As such, the trial court was authorized under Fla.R.Crim.P. 3.190(h)(3) to deny summarily the motion to suppress. Herring v. State, 394 So.2d 433 (Fla. 3d DCA 1980); State v. Butterfield, 285 So.2d 626 (Fla. 4th DCA 1973).
As a final blow to the suppression point, it is plain beyond doubt that the merits of the defendant's search and seizure contentions on appeal [defendant's main brief, pp. 15-17] have not been properly preserved for appellate review. As previously stated, a vague, conclusory and totally inadequate pre-trial motion to suppress was filed below; this was followed, in turn, by a series of short, vague and sporadic defense objections at trial to some of the items of evidence when offered below by the state  objections which mirrored the patently defective nature of the motion to suppress. At no time did the defendant argue with any specificity or case authority, as he does now, that his rights were violated below because the subject subpoena was unconstitutionally overbroad and was used as a ruse to conduct a general exploratory search for evidence. Based on a long and well-settled line of authority, we are precluded by law from considering the search and seizure contentions raised herein as they were never clearly presented to the trial court and, in essence, are urged here for the first time on appeal. See e.g., Ferguson v. State, 417 So.2d 639, 641 (Fla. 1982); Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982); State v. Jones, 377 So.2d 1163, 1164 (Fla. 1979); Castor v. State, 365 So.2d 701, 703 (Fla. 1978); Paul v. Kanter, 155 So.2d 402 (Fla. 3d DCA 1963).
Affirmed.
FERGUSON, Judge (dissenting).
Appellant, at all pertinent times herein, was the president of a nonprofit corporation *494 subsidized by government funds. Sometime in 1977 he became the target of a criminal investigation for misappropriation of corporate funds. He was subsequently convicted and sentenced on thirty counts of conspiracy and grand theft.
The Motion to Suppress documentary evidence alleged that on November 7, 1977, Dade County police officers went to the office of the corporation, which appellant heads as president, armed with a subpoena styled "State of Florida vs. Nathaniel Dean and Nimrod Harmon, Investigation Witness Subpoena Duces Tecum", which commanded the custodian of records to produce:
All books and all records of [the corporation] ... from January 1, 1975, through October 31, 1977, including general ledger, accounts receivable ledgers, check stubs, cancelled checks, bank statements, receipts, invoices, all other records and documents, correspondence and memos relating to receipt of money, property and funds from Dade County, Florida, or any agency of the U.S. Government or State of Florida, directly or indirectly, and the disbursements or expenditures of said funds during the aforesaid time period.
After law officers served the subpoena upon an employee who was not the custodian of records, they searched the premises, then seized a "truck load" of records from the office, including some which, admittedly, were not described in the subpoena. The records were first transported to the office of a government auditor, then eventually to the state attorney's office. The motion, which alleged that the documents had been illegally obtained, was set for pretrial hearing. Without conducting an evidentiary hearing on the motion the court adopted the state's argument and ruled summarily that appellant, as a corporate officer, lacked standing to contest a seizure of corporate records.[1]
Appellant and the co-defendant, Nimrod Harmon, were tried jointly. The defense strategy of the co-defendant was allegedly unknown. Appellant's counsel first made a brief opening argument. Counsel for co-defendant then revealed his defense strategy, accusing appellant of guilt as to the crimes charged, of creating a scheme, using other people to his advantage, and duping the co-defendant into becoming a part of the alleged criminal scheme. Appellant's motion for severance was denied. During the trial, co-defendant Harmon took the witness stand and testified at length consistent with his attorney's opening remarks. Appellant did not take the witness stand. In closing argument, counsel for the co-defendant described appellant as a "thief ... who uses people ... to cover his ass". Appellant renewed the motion for severance several times during the trial, all of which were denied.
At a conference held at the conclusion of the evidence, the court allocated one hour to each defendant for closing argument, any part of which could be used for rebuttal argument. Appellant, on the court's instruction, made the first closing argument, reserving part of his time to rebut both the argument of the co-defendant and the state. The co-defendant's closing argument followed and was mainly accusatory of appellant. The state's waiver of argument was, it is contended, an argument  which brings us to another point on appeal.
When it was time for the state's argument, the prosecutor stood, holding up a stack of the exhibits before the jury, and announced:
"I think I can save this court some time. The evidence speaks for itself. We rest."
In denying appellant the right to make rebuttal argument, the trial court reasoned that since the state had made no argument, there was nothing for appellant to rebut.

I

The Subpoena Duces Tecum
It might send chills down the backs of corporate officers all over this district to *495 read that a state attorney may, by subpoena, direct law officers to enter a corporation's business offices after working hours to search and seize all records, even those not described in the subpoena, without a preliminary showing of probable cause to believe that the records are evidence of criminal activity, and that the corporate officer who may be the target of the investigation, and from whose office the records were taken, would have absolutely no standing to challenge the search and seizure on constitutional grounds. That incorrect ruling, which cleared the way for the admission of critical evidence, presents one of the important issues the majority has chosen not to address.
In the landmark case Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), the United States Supreme Court held that a person has standing to claim the protection of the fourth amendment against a search of commercial premises where the area searched was one in which there was a reasonable expectation of freedom from governmental intrusion.[2] More recently in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), although favoring an analysis for fourth amendment purposes without treating standing separately, the United States Supreme Court cited Mancusi v. DeForte with approval. 439 U.S. at 139, n. 7, 99 S.Ct. at 428, n. 7. No matter which analysis is used, there is no question but that appellant has a right to show that his fourth amendment rights were violated by the challenged search and seizure. The Florida Supreme Court, as evident in State v. Tsavaris, 394 So.2d 418 (Fla. 1981), obviously has not adopted the "single-treatment" analysis espoused by Justice Rehnquist in Rakas, and still recognizes that standing is a question deserving of consideration independent of the fourth amendment claim.[3]
A divided court in State v. Tsavaris approved the use of a subpoena duces tecum in connection with a criminal investigation:
Subpoenas duces tecum are different from search warrants and are indisputably less intrusive. While there is no opportunity to challenge a search warrant, a subpoena duces tecum is subject to a motion to quash prior to production of the requested materials. While a search warrant may involve the police rummaging through one's belongings and may involve the threat or actual use of force, a subpoena duces tecum requires the subpoenaed person to bring the materials sought at a time and place described in the subpoena. [cites omitted]. 394 So.2d at 427.
Tsavaris is an excellent background for examination of this case. There, the subpoena was addressed to and served upon the records custodian. She went with the police officers to the office of the state attorney with the specific records requested. At the state attorney's office, copies were made of the documents and the originals were returned. In light of what appears to have been the significant saving feature of the subpoena duces tecum in Tsavaris  the opportunity to oppose the subpoena before production of the documents  and assuming that there is standing here, an issue never factually determined, it is most improbable that the seizure in this case could withstand a motion to suppress.
The facts of this case are even more egregious than those in State v. Hayes, 305 So.2d 819 (Fla. 1st DCA 1975), where the suppression of evidence seized pursuant to a subpoena duces tecum was affirmed. In *496 Hayes, law officers went to the business offices of the respondents to serve a subpoena duces tecum. While there, they effected an arrest of a third person, after which, the documents described in the subpoena were seized and transported to the office of the state attorney. As justification for the seizure of documents the state contended the search and seizure was incident to an arrest. The appellate court approved the trial court's order of suppression, incorporating that ruling into the appellate opinion:
* * * * * *
The books and records were not brought to the office of an Assistant State Attorney as commanded by the subpoena, they were clearly seized and transported there by law officers. It is presumed that the records seized by subterfuge are still in the office of the State Attorney.
The Court specifically holds that the issuance of a subpoena duces tecum in this case was a subterfuge for searching and seizing the papers of the Defendants, was a fishing expedition to obtain evidence otherwise not within reach by lawful means to ascertain the existence of documentary evidence, and an effort to ascertain whether something of value to criminal prosecution may show up.
"To quote from State ex rel Martin v. Mitchell [Mitchell] 188 So.2d 684 (Fla. DCA, 1966), as quoted in Imparato v. Spicola, 238 So.2d 503, 511 (Fla. DCA 1970), `The vigor of the State Attorney in the use of the process of the court should be sustained and commended in all instances except where the rights of others are impaired or denied. (Emphasis supplied.)' The rights of others have been impaired and denied in the issuance of this subpoena duces tecum. See Imparato v. Spicola, supra, and Mancusi v. DeForte, 329 [392] U.S. 364, 20 L.Ed.2d 1154, 88 S.Ct. 2120 (1968)."
The motion to suppress, though inartfully drawn, sufficiently contested the subpoena duces tecum as being a subterfuge for a warrant.[4] On its face the motion was legally sufficient, Florida Rules of Criminal Procedure 3.190(h)(3), and should have been considered on the merits.
Lastly, the state contends the Motion to Suppress may not be considered on this appeal because appellant, at trial, did not renew his objections to all the documents which were subject of the motion to suppress, and as to those which were objected to, the grounds were not the same, citing Fraterrigo v. State, 151 Fla. 634, 10 So.2d 361 (1942); Robertson v. State, 94 Fla. 770, 114 So. 534 (1927); Jones v. State, 360 So.2d 1293 (Fla. 3d DCA 1978); Stanley v. State, 357 So.2d 1031 (Fla. 3d DCA 1978); Tennant v. State, 205 So.2d 324 (Fla. 1st DCA 1967). The state also contends that appellant had an obligation to show, at trial, that he had a reasonable expectation of privacy in the premises searched. [e.s.]
Although the state concedes that some of the documents were objected to at trial, the majority opinion goes much further to find that "defendant did not renew his pretrial motion to suppress at the time the disputed evidence was offered in evidence before the jury." Appellants offered several reasons during pretrial arguments as to why the documents should not be admitted at trial. When the documents were introduced as evidence many objections were made. One objection made at trial was based on the same argument advanced at pretrial that *497 the subpoena was overly broad, akin to the subpoena in Imparato v. Spicola, 238 So.2d 503 (Fla. 2d DCA 1970)  a leading case which holds that an omnibus subpoena for all or even a substantial part of books or records is unreasonable and violative of the fourth amendment. Another objection was on the ground that the employee served with the subpoena duces tecum was not a custodian of records  a fact admitted by that employee when called as a state witness. Most significant, the parties afterwards stipulated, at trial and on the record, that there would be a standing objection to all of the documents based on the objection that the person served was not the records custodian and, "the motion"  obviously referring to the motion to suppress. There was an additional objection to the subpoena on the ground that upon seizure of the documents they were first taken to an auditor  allegedly, proof that the subpoena was an unlawful "fishing expedition". There is nothing else appellant was obligated to do in order to preserve the issue for our review.
The state's second contention  that appellant was obligated to make a showing at trial  must be interpreted as a requirement to put on a defense. Though the majority seems to agree, that too is fundamentally incorrect.

II

Motion to Sever
The majority relies on Menendez v. State, 368 So.2d 1278 (Fla. 1979), for the proposition that there is no abuse of discretion in refusing to grant a motion for severance where the evidence of guilt is overwhelming. For the purpose of determining whether the trial court abused its discretion in denying the motion for severance the Menendez, court applied a two-part test: (1) whether denial of the motion created a potential for prejudice and, if so, (2) whether actual prejudice was negated owing to the conclusive nature of the state's evidence. Menendez is distinguishable on the facts. In Menendez there were only two references by the co-defendant to appellant's guilt, once during opening argument and once during closing argument. In opening argument the co-defendant announced that his defense would be designed to show that Menendez, and not the appellant, had committed the robbery and murder. Menendez's motions for mistrial and severance were denied, however, the court cautioned the jury to disregard the statement of counsel and to base its verdict solely on the evidence produced during the course of trial. There was no other attempt by Menendez to sever his trial from that of the co-defendant. The co-defendant in Menendez presented no evidence during the evidentiary phase of the trial to support his earlier assertion. The only other reference by the co-defendant to Menendez's guilt came during closing argument when counsel argued that the evidence against Menendez was overwhelming and "the opposite is true as to the co-defendant". 368 So.2d at 1280.
The supreme court revisited Menendez v. State in Crum v. State, 398 So.2d 810 (Fla. 1981), and implicitly limited Menendez to the facts presented in that case. A factual distinction was made between the two cases, which distinction is pertinent here. The Crum court noted that Menendez v. State was unlike Crum v. State in that the co-defendant in Crum not only accused the defendant of the murder in opening and closing argument but also put on evidence to prove his accusation. It was held that by denying Crum's motion for severance, even though the motion was not made prior to trial, "the trial court forced [Crum] to stand trial before two accusers: the State and his co-defendant"  an occurrence in this case. Because appellant, as a defense strategy, chose not to take the witness stand, his situation was worsened. Relishing the predicament, the prosecutor here opposed the severance, arguing that the antagonistic defenses were not state-created:
[Prosecutor]: ... It just happens to be that [co-defendant's] defense is similar to our prosecution with respect to [appellant]. That doesn't mean we are not prosecuting [co-defendant]. We are prosecuting both of them. It happens to be a coincidence that [co-defendant's] defense is pointed right at Mr. Dean.
*498 In considering the question whether the court abused its discretion in denying the motion for severance because of conflicting defenses, that the state is not a wrong-doer is totally irrelevant.
In Rowe v. State, 404 So.2d 1176, 1177 (Fla. 1st DCA 1981) it was held that where each defendant accused his co-defendant of being solely responsible for the alleged crime and introduced evidence to prove the accusations, the trial judge's denial of the defendant's motion for severance constituted an abuse of discretion, citing Crum v. State. Again, in Huff v. State, 409 So.2d 144 (Fla. 2d DCA 1982) it was held, applying Crum v. State, that a motion for severance made after commencement of trial should have been granted where the co-defendant took the witness stand and testified that appellant had forced him to take part in the crime  again, an occurrence in this case. See also Thomas v. State, 297 So.2d 850 (Fla. 4th DCA 1974) (motion to sever prosecution of defendant and co-defendant should have been granted where there was a conflict in defenses and defendant elected not to testify whereas co-defendant took the witness stand to testify), and Sylvia v. State, 210 So.2d 286 (Fla. 3d DCA 1968) (when two defendants are charged and it is apparent that one defendant will put on no evidence and the other will rely on the defense of entrapment, it is a better policy that they be tried separately).
Failure to sever the appellant's trial from that of the co-defendant's was potentially prejudicial. The remaining question in the two-part test to determine whether the trial court abused its discretion in denying the motion for severance is whether the evidence was overwhelming.

III

Closing Argument
Although thinly disguised as no argument, the state's comment that "the evidence speaks for itself" was not a waiver of argument but a strong suggestion to the jury that the evidence was sufficient to establish guilt beyond and to the exclusion of every reasonable doubt  to which appellant should have been permitted to respond.[5] Even if it were not an argument, having already erroneously denied the severance, the court compounded the prejudice by denying appellant the right to respond to the argument of his second accuser  the co-defendant. The same problem was presented in Thomas v. State. There the court determined that denying appellant the opportunity to rebut the accusations made by the co-defendant in closing argument served to emphasize the propriety of a severance:
The pretrial motion to sever should have been granted. Because the cocaine was found on the floor between the co-defendant's legs, a conflict between the defendants' defense was inherent in the case. This became a definite problem when the defendant elected not to testify and the co-defendant took the stand. The defendant was required to make his final argument prior to that of the co-defendant and had no opportunity to rebut arguments of the co-defendant putting the blame on the defendant. This was particularly pronounced when the co-defendant's counsel pointed out that his client had taken the stand and subjected himself to cross-examination, an argument that the prosecutor would have been forbidden to make. Thomas v. State, 297 So.2d at 852.

IV

Overwhelming Evidence
The majority's conclusion that appellant's conviction can be affirmed because of the overwhelming nature of the evidence need *499 be addressed only briefly. The overwhelming evidence, remarkably, consists in large part, of the same documents which defendant sought unsuccessfully to suppress as being the products of a search and seizure which violated his constitutional rights. An error is made harmless by overwhelming evidence only where, absent the challenged evidence, the remaining evidence is overwhelming. [e.s.] United States v. Phillips, 664 F.2d 971 (5th Cir.1981); Odom v. State, 403 So.2d 936 (Fla. 1981); Shade v. State, 400 So.2d 850 (Fla. 1st DCA 1981); see also Harrell v. State, 405 So.2d 480 (Fla. 3d DCA 1981). On review of the record it is unmistakably clear that absent the challenged evidence the evidence is less than overwhelming; as to most counts of the information, the evidence is nonexistent.[6]

V

Conclusion
In my opinion, this is not a close case on the legal issues. On strict application of the recent law of this state, reversal is mandated. Appellant did not receive the fair trial which is guaranteed him by both federal and state constitutions. The errors complained of are not only constitutional, but too numerous to be swept aside as harmless error. The case should be remanded for a new trial, to include an evidentiary hearing on standing to challenge the seizure of records.

SUPPLEMENT TO DISSENTING OPINION
The majority opinion was revised after the dissent was written, so my dissent is supplemented only to address the majority discussion on the standing issue. The sufficiency of the motion to state facts showing standing has never been raised as an issue in this case. During arguments before trial, the defendant stated a valid basis and cited appropriate legal authority in support of the motion to suppress  anticipating a hearing. In response, the state likewise offered to present evidence to show lack of standing. The determination that defendant, as a corporate officer, lacked standing was not based on insufficient pleadings, but on a misunderstanding of the law. Nonetheless, a defendant raising a fourth amendment claim is not required by the rules to plead sufficient facts  as to both the substantive claim and standing  in his initial motion to suppress at the risk of being forever barred. That interpretation of the rule would certainly be expeditious but at the price of complete fairness. The proper interpretation of Rule 3.190(h)(3) is given in State v. Butterfield, 285 So.2d 626, 627 (Fla. 4th DCA 1973), a case relied upon by the majority:
[where] motion to suppress was legally insufficient because of lack of facts [it] should have been denied in the first instance [but] without prejudice just as a matter of procedure, as required... .
Finally, the majority's reference to a pretrial "hearing" is mistaken; there was no hearing. In United States v. Bush, 582 F.2d 1016 (5th Cir.1978) and United States v. Britt, 508 F.2d 1052 (5th Cir.1975), other cases relied upon by the majority, whether a corporate officer had standing to challenge a search and seizure of corporate records was decided only after an evidentiary hearing. Further, United States v. Bush holds that standing may appear from the record, even without a hearing, if anything suggests, even remotely, that the search is directed at the corporate officer as distinguished from corporate activity generally, citing Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Hunt, 505 F.2d 931 (5th Cir.1974). Here the record shows, indisputably, that the individual defendants, not the corporation, were at all times the target of the search and seizure.
NOTES
[1] No contention is raised here that the defendant should have been allowed an opportunity to reply to the co-defendant's argument to the jury; indeed, the defendant below made no such request of the trial court.
[1] Having decided at the outset that appellant was without standing, essentially, a ruling that the documents would be admitted into evidence even if illegally obtained, an evidentiary hearing as to the legality of the seizure was unnecessary.
[2] The room from which the documents were taken in Mancusi v. DeForte was a large one room office which DeForte shared with several other union officers. The court did not think it significant that DeForte made no claim of exclusive personal use as to any part of the office, or that the record failed to reveal from what part of the office the records were taken. The parties had stipulated that DeForte spent "a considerable amount of time in the office" and that in his capacity as a union official, the records in question were in his custody at the time of seizure.
[3] It was held that "[a]lthough [appellant] did not have standing to challenge the form or service of process of the subpoenas, he did have standing to object to the subpoenas on the basis that they violated his fourth amendment rights." State v. Tsavaris, 394 So.2d at 425.
[4] In part the subpoena provided:
 THE STATE OF FLORIDA
 vs. WITNESS SUBPOENA DUCES
 INVESTIGATION TECUM
 TO ALL AND SINGULAR THE SHERIFFS OF THE STATE OF
 FLORIDA: GREETINGS
 We command you to summon
 CUSTODIAN OF RECORDS
 EDISON LITTLE RIVER SELF HELP COMMUNITY
 COUNCIL, INC.
 139 Northeast 54th Street
 Miami, Florida

to be and appear before the State Attorney on the 6th floor of the Metropolitan Dade County Justice Bldg., 1351 N.W. 12th Street, Miami, on the ____ day of Instanter, 1977 at ____ o'clock A. ____ M. to testify and the truth to speak in behalf of the State of Florida in the above styled cause and to produce and deliver, ... .
The absence of a date and time for compliance with the subpoena, as well as insertion of the word "instanter", is strong evidence that it was intended that the subpoena be "executed" as a warrant rather than "served" upon a custodian of records as a subpoena.
[5] The state concedes that while commenting that the "evidence speaks for itself" the prosecutor raised a stack of exhibits. Appellant argues further that the exhibits were raised in front of the jury "dramatically". Rule 3.250, Florida Rules of Criminal Procedure provides that "a defendant providing no testimony in his own behalf, ... shall be entitled to the concluding argument before the jury.
[6] The importance of the challenged documents was conceded by the state at the outset:

THE COURT: ... How long will his case take to try?
PROSECUTOR: Exclusive [of] jury selection, the State's case should take about two days. It is mainly a records case.