436 So.2d 56 (1983)
Clyde FOSTER, Appellant,
v.
STATE of Florida, Appellee.
No. 60549.
Supreme Court of Florida.
July 21, 1983.
Rehearing Denied September 16, 1983.
*57 Carl S. McGinnes, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Gregory C. Smith, Asst. Atty. Gen., Tallahassee, for appellee.
ALDERMAN, Chief Justice.
Clyde Foster appeals his two convictions of first-degree felony murder and his sentences of death. We affirm the convictions, but we vacate the death sentences and remand to the trial judge for resentencing.
On Saturday, August 3, 1974, the bodies of C.J. Weimorts and Buddy Grady were found in Weimorts' automobile in a vacant lot behind an apartment complex in Columbia County. Both men died from gunshot wounds in the back. Their pockets were turned inside out, and their wallets were missing. Also missing were a cigar box containing a .38 caliber pistol and the Friday receipts (cash and checks) from Weimorts' gas station. Foster's fingerprint was found on the inside of the back window of Weimorts' automobile. The murder weapon, a .22 caliber pistol, was owned by Foster's girl friend and was recovered from her apartment several days after the murders. Also recovered from the girl friend's apartment was a pair of men's tennis shoes which were linked by expert testimony to footprints leading from the automobile toward the apartments. The .38 caliber pistol belonging to Weimorts and kept in the cigar box was recovered from a local pawnshop. The pistol had been pawned by a man who testified that he had purchased it from Foster.
Foster was initially indicted for both the felony murders and premeditated murders of C.J. Weimorts and Buddy Grady. Following a jury trial, he was convicted of two counts of first-degree felony murder and two counts of second-degree murder. The trial court imposed the death sentence, and Foster appealed. In Foster v. State, 387 So.2d 344 (Fla. 1980), we found that Foster was denied his right to the effective assistance of counsel because both he and his codefendant were jointly represented by the same court-appointed attorney. The charges against the codefendant were dropped after she testified for the state against Foster. We vacated the judgment and sentence and remanded the case for a new trial. Upon remand, the trial court dismissed the two counts of premeditated first-degree murder, and Foster was tried and convicted of the two counts of first-degree felony murder. The jury recommended and the trial court imposed the death sentence for each of the murders.
Foster challenges his convictions of first-degree felony murder on several grounds, none of which we find to be meritorious. Initially, he argues that because of the representation conflict during the first trial, his attorney did not adequately cross-examine Ben Fluellen, a state witness who died before the second trial. Therefore, Foster asserts, it was reversible error to allow Fluellen's testimony from the first trial to be read to the jury during the second trial. We do not agree. We reversed Foster's previous convictions solely because of the conflict of interest that was created when the trial court appointed the same attorney to represent both Foster and his codefendant who subsequently became a witness for the state. It does not appear from the record that this conflict of interest in any way impaired or affected the adequacy of Foster's attorney's cross-examination of Fluellen.
Foster also contends that he was prejudiced because the trial court erroneously instructed the jury on second-degree felony murder as it was statutorily defined in 1975. The proper instruction for the jury, he argues, would have been on second-degree felony murder as defined in 1974, the year the murders were committed. The record reveals that the trial judge, the prosecutors, and Foster's two trial attorneys discussed extensively the proposed jury instructions. Although the instruction was erroneously based on a definition of second-degree felony murder not in effect at the time of the murders, Foster's attorneys did not object. Thus, the issue is not properly *58 before us, and we will not consider it. Fla. R.Crim.P. 3.390(d); see Jones v. State, 411 So.2d 165 (Fla. 1982).
We have considered the remaining issues raised by Foster and find them to be without merit.[*] In addition to reviewing the record in light of the errors alleged, we have reviewed the evidence pursuant to Florida Rule of Appellate Procedure 9.140(f) and conclude that no new trial is required.
Foster also challenges his death sentences which were imposed by the court following a jury recommendation of death. The trial court found as aggravating circumstances that (1) the capital felonies were committed while Foster was engaged in the crime of robbery, (2) the capital felonies were committed for the purpose of avoiding or preventing lawful arrest, and (3) the capital felonies were committed to disrupt or hinder the lawful exercise of the enforcement of law. As mitigating circumstances, the trial court found that Foster had no significant history of criminal activity and that he was 21 years old at the time of the murders.
Foster argues that the trial court erred in finding that the capital felonies were committed to avoid lawful arrest and to hinder law enforcement. He contends that there was insufficient evidence to support either of these aggravating circumstances. We agree. Although we know from the medical examiner's testimony that both victims were shot from behind as they sat in the front seat of Weimorts' automobile, we do not know what events preceded the actual killing. In Menendez v. State, 368 So.2d 1278 (Fla. 1979), wherein we found that it was doubtful that the murder was committed to avoid lawful arrest within the contemplation of our statute, we held that the defendant's motive cannot be assumed and that the burden is on the state to prove it. As to the burden of proof necessary to prove this aggravating circumstance, we stated in Riley v. State, 366 So.2d 19, 22 (Fla. 1978), that "the mere fact of a death is not enough to invoke this factor when the victim is not a law enforcement official. Proof of the requisite intent to avoid arrest and detection must be very strong in these cases." See also Armstrong v. State, 399 So.2d 953 (Fla. 1981). We find here that the state did not prove beyond a reasonable doubt that Foster committed the murders to avoid lawful arrest.
Likewise, we find that the state did not prove beyond a reasonable doubt that the murders were committed to hinder law enforcement.
We have also considered Foster's death sentences in light of the recent United States Supreme Court decision in Enmund v. Florida, ___ U.S. ___, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and find that Enmund does not apply. Enmund was convicted and sentenced to death for the felony murder of an elderly couple at the back door at their farmhouse in central Florida. In that case, there was no direct evidence that Enmund was present at the back door when the plan to rob the elderly couple led to their being murdered. The only evidence of the degree of his participation was the jury's likely inference that he was the person in the get-a-way car by the side of the road waiting to help the robbers escape. We affirmed Enmund's convictions and death sentences under the felony murder rule. In reversing the death sentences, the United States Supreme Court held that the eighth amendment does not permit the imposition of the death penalty "on one such as Enmund who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." Enmund v. Florida, 102 S.Ct. at 3376.
*59 In the present case, Foster, like Enmund, was convicted of two counts of felony murder and was sentenced to death. Unlike Enmund, however, Foster's convictions were supported by sufficient evidence showing that he was in fact the triggerman responsible for the murders of Weimorts and Grady.
Because there now remain only one properly found aggravating circumstance and two mitigating circumstances in the original sentencing order, the trial court should be given an opportunity to evaluate the relative weight of those circumstances and any others which it may find to have been established by the record in this case. Accordingly, we affirm Foster's convictions of felony murder in the first degree, vacate his sentences of death, and remand for resentencing by the trial judge.
It is so ordered.
OVERTON, McDONALD and EHRLICH, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
ADKINS, J., concurs in the conviction, but dissents from the sentence.
BOYD, Justice, concurring in part and dissenting in part.
I concur with the majority opinion affirming appellant's convictions on two counts of first-degree murder. I concur with the majority opinion in approving the finding of the trial court that there were two statutory mitigating circumstances shown: appellant had no significant record of prior criminal activities and his youthful age of twenty-one years was in this instance a proper mitigating factor. The majority is also correct, I believe, in affirming that portion of the trial court's order which found that the murders were committed in the course of robbery and that both capital felonies were aggravated by this circumstance.
The evidence showed that appellant lived in the immediate community where the murders occurred and near the business operated by the victims. Weimorts, the owner of the filling station, and Grady, his employee, were seated in the front seat of Weimorts' automobile when they were killed. The cause of death was multiple gun shots in the backs of the victims. A permissible inference from the evidence is that the killer was in the back seat and shot both victims from close range. There was no evidence of resistance to the robbery, so a further permissible inference is that the killer executed the victims in cold blood in order to rob them or after robbing them. The trial judge heard all of the evidence and concluded that the murders were committed for the purpose of avoiding arrest in that the killer wanted to eliminate the victims as witnesses. My review of the record convinces me that the trial judge was correct in finding this aggravating circumstance.
I therefore conclude that there were two properly found aggravating circumstances. There were also two statutory mitigating circumstances. The jury recommended death. In State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), this Court said that the process of analyzing aggravating and mitigating circumstances is not a counting process but is rather a weighing process. The weighing of the circumstances is not quantitative but qualitative. I believe the trial judge properly struck the balance by following the jury's recommendation and sentencing appellant to death. The magnitude of appellant's offense against the victims and against society warrants the penalty of death. I would affirm both the convictions and the sentences of death.
NOTES
[*] Foster additionally contends that the trial court erred in allowing Weimorts' widow to testify about her husband's business habits, that the court erred in denying his motion for mistrial based on improper closing arguments, that the court erred in denying his motion to dismiss the two felony murder counts based on double jeopardy grounds, that the court erred in denying his motion to seal former testimony and statements because of his attorney's conflict of interest, that the court erred in denying his motion to disqualify the trial judge, and that the court erred in denying his motion to discharge under the speedy trial rule.