238 So.2d 503 (1970)
John J. IMPARATO, John J. Imparato, Jr., Thelma Imparato, Michael Imparato, Sal Forte, Robert E. Cleveland and Charles Rickerson, Petitioners,
v.
Joseph G. SPICOLA, State Attorney for the Thirteenth Judicial Circuit, Respondent.
No. 70-33.
District Court of Appeal of Florida, Second District.
August 19, 1970.
*504 Henry Gonzalez, Tampa, for petitioners.
*505 Earl Faircloth, Atty. Gen., Herbert P. Benn, Deputy Atty. Gen., P.A. Pacyna, Asst. Atty. Gen., Tallahassee, for respondent.
PIERCE, Judge.
Petitioners have applied to this Court for a writ of certiorari to review an order of the Hillsborough County Circuit Court denying their motion to quash subpoenas duces tecum previously served upon them, returnable before the local State Attorney, Hon. Joseph G. Spicola, Jr.[1]
On December 11, 1969, the above named petitioners were officers and/or directors of two corporations, Southport Stevedores, Inc. and East Gulf Shipping Corporation. On that date, the State Attorney procured issuance of and service upon petitioners of separate subpoenas duces tecum directing them to appear before the State Attorney at a stated time and date "to testify and the truth to speak in the above entitled cause", which cause was entitled "State of Florida v. John Doe". Each subpoena ordered the petitioner therein named, "not as an individual", but in his or her corporate capacity, to bring and produce at said time and place 
"any and all records of and pertaining to said corporation[s], including but not limited to bank records, ledger slips, deposit slips, minute books, stock books, general ledger, accounting ledger, cash disbursements ledger, salary sheets, invoices, paid receipts, sales records, manifests and correspondences, from date of inception of corporation[s] up to and including the present date."
On January 7, 1970, petitioners filed a joint motion to quash the various subpoenas duces tecum, which motion was denied on January 12, 1970. On January 14, 1970, they filed petition here for a writ of certiorari under Article V, § 5(3) of the Constitution, F.S.A. to review and quash the order denying the motion.
Petitioners challenge the validity of the subpoenas duces tecum upon several grounds, viz: (1) failure of the State Attorney to comply with the Florida Rules of Civil Procedure relative to issuance of such subpoenas, (2) the lack of designation of the proper custodian of the corporate records desired, (3) lack of showing of the materiality of the papers and documents described, and (4) the too-broad scope of the attempted compulsory production. We hold against petitioners on all grounds relied upon, except the last one, with which we agree.
We will consider the grounds seriatim.

(1) Applicability of the Florida Rules of Civil Procedure.

The gist of the petitioners' contention here is that the State Attorney was acting for the Attorney General to secure possible evidence in aid of a civil suit contemplated by the Attorney General to effect Court dissolution of the charters of certain corporations suspected of being controlled by the forces of "organized crime and vice"; but that in the procuring of such subpoenas the provisions of the Florida Rules of Civil Procedure were not complied with.
It is true that the 1969 Florida Legislature, by Session Law Ch. 69-272, added §§ 932.58, 932.59 and 932.60 F.S., which authorized the filing of civil proceedings in the Circuit Court by the Attorney General to revoke the charter of a corporation when the officers or directors of such corporation engage in certain criminal activities therein described which may generally be categorized here as "organized crime and vice". One of these two new statutory sections, § 932.60, provides that such proceedings so instituted "shall be conducted in accordance with the Florida Rules of *506 Civil Procedure". Rule 1.410(b), 30 F.S.A. provides for issuance of a subpoena for the production of documentary evidence and also provides certain rather stringent safeguards surrounding the issuance of such subpoena, such as authorizing the Court, prior to the return day of the subpoena, to quash or modify the same "if it is unreasonable and oppressive", and also to require prepayment of reasonable costs "of producing the books, papers, documents or tangible things".
But in expounding their theory upon this point, petitioners fail to take cognizance of two vitally applicable factors: (a) there is no showing in the record that the Attorney General had anything to do with procuring the issuance of the instant subpoenas, and (b) the State Attorney in his official capacity had full and plenary authority to activate the subpoenas duces tecum, either independently or at the behest of the Attorney General.
(a) Petitoners, both in the lower Court and here repeatedly assert that the Attorney General actively instigated the issuance of the subpoenas and was "behind" the move to coerce the production of the documents described therein. Such assertion was denied in the lower Court and is expressly disclaimed in respondent's brief filed here. And no evidentiary support for such representation has been advanced by petitioners. In this situation, we accept as we must the statements of the Attorney General and State Attorney.
(b) However, the point as to participation of the Attorney General in procuring the subpoenas may be disregarded upon much firmer ground. The State Attorney, in his official capacity as such, had plenary authority to instigate the subpoena process.
Concededly, our Florida Constitution and Statutes give to State Attorneys important and responsible powers and duties. F.S. § 27.04 F.S.A. provides that the State Attorney "shall have summoned all witnesses required on behalf of the state" in a trial or official investigation in which he is involved. He is also "allowed the process of his court to summon witnesses * * * to testify before him as to any violation of the criminal law upon which they may be interrogated * * *". We agree thoroughly with everything said by the 4th District Court in State ex rel. Martin v. Mitchell, Fla.App. 1966, 188 So.2d 684, with respect to the statutory and common law powers of the State Attorney.
He has been loosely referred to many times as a "one-man grand jury". And he is truly that. He is the investigatory and accusatory arm of our judicial system of government, subject only to the limitations imposed by the Constitution, the common law, and the statutes, for the protection of individual rights and to safeguard against possible abuses of the far-reaching powers so confided.
In the instant case, the respondent State Attorney officially procured issuance of the subpoenas involved and in doing so he was lawfully exercising a portion of the sovereign power of the State in the discharge of his duties. With respect to the subpoenas he didn't need the Attorney General. And by the same token, any interest that the Attorney General might display in the matter of the subpoenas, or even his active participation therein, could not detract from, nor in anywise affect, the validity or compelling force of the subpoenas. On the right of issuance, the State Attorney is answerable only to himself and his conscience.

(2) Custodian of the Corporate Records Desired.

It is argued that the subpoenas are invalid because the actual custodian of the designated records is not specifically designated. There is no merit to this contention. Each of petitioners is specifically described as an officer or director of either Southport Stevedores or East Gulf. It must be reasonably assumed that one or more of petitioners would be in a *507 position to produce the records desired. And those of petitioners who were not in such position could certainly make return accordingly. Cf. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771.

3. Materiality of the Records Desired.

Petitioners contend that some showing should have been made somewhere along the line that the described records were material to an existing or anticipated law suit or investigation. In light of the fact that the subpoenas were issued at the specific direction of the State Attorney in connection with a presumably lawful investigation he was making in his official capacity, no such showing was necessary. Everything we have hereinbefore stated under Point (1) applies here. The State Attorney, in his official acts as such, is ordinarily not bound by the Florida Rules of Civil Procedure. He derives his authority from the Constitution, the Common Law and the Statutes. Even as the grand jury is immune from the requirement of showing materiality in compelling production of testimony and documentary evidence it desires, so is the State Attorney in his official sphere.

(4) The Broad Scope of the Books, Records and Documents Sought to be Coerced.

This proposition raises grave constitutional questions.
A casual inspection of the subpoenas reveals that they call for the compulsory production of every book, paper, document and record of both Southport and East Gulf from their creation as corporations to the date the subpoenas were issued. This is entirely too broad and all-encompassing to satisfy the Fourth Amendment to the Federal Constitution and § 22 of the Declaration of Rights to the Florida Constitution protecting against unreasonable searches and seizures, and the Fifth Amendment and § 12 respectively guaranteeing against compulsory selfincrimination.[2]
The Fourth Amendment guarantees "the right of the people to be secure in their * * * papers and effects against unreasonable searches and seizures * * *" and the Fifth Amendment guarantees that "no person shall be * * * compelled in any criminal case to be a witness against himself, nor be deprived of * * * property without due process of law * * *". As stated by Mr. Justice Sutherland in Jones v. Securities and Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015 these rights of the individual are closely interwoven in principle.
In Jones, the U.S. Supreme Court considered the validity of a subpoena duces tecum calling for the compulsory production by one Jones of certain 
"books, records, and papers, listed as follows: General ledger, subsidiary ledgers, journal, cash book, books of account and financial statements of J. Edward Jones, general ledger, journal, cash book and books of account of J. Edward Jones relating to J. Edward Jones Royalty Trust, Series `M'; all contracts, agreements and correspondence of J. Edward Jones relating to the distribution of Participation Trust Certificates in J. Edward Jones Royalty Trust, Series `M'; all correspondence and communications of J. Edward Jones with any State authority relating to the distribution of Participation Trust Certificates in J. Edward Jones Royalty Trust, Series `M'."
Likening the subpoena duces tecum to "a fishing expedition * * * for the chance that something discreditable might turn *508 up", the Court held the subpoena invalid in the following language:
"`A general, roving, offensive, inquisitorial, compulsory investigation, conducted * * * without any allegations, upon no fixed principles, and governed by no rules of law, or of evidence * * * is unknown to our constitution and laws; and such an inquisition would be destructive of the rights of the citizens, and an intolerable tyranny. Let the power once be established, and there is no knowing where the practice under it would end.'
The fear that some malefactor may go unwhipped of justice weighs as nothing against this just and strong condemnation of a practice so odious. And, indeed, the fear itself has little of substance upon which to rest. * * *
The philosophy that constitutional limitations and legal restraints upon official action may be brushed aside upon the plea that good, perchance, may follow, finds no countenance in the American system of government. An investigation not based upon specified grounds is quite as objectionable as a search warrant not based upon specific statements of fact. Such an investigation, or such a search, is unlawful in its inception and cannot be made lawful by what it may bring, or by what it actually succeeds in bringing, to light."
The progenitor of the cases on this subject is Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, wherein the Government was seeking the seizure and forfeiture of certain personal property which had been fraudulently imported into the United States in violation of a customs revenue law. In the course of the proceeding, upon petition of the U.S. Attorney, the Court issued order directing the claimants to produce the invoice of the merchandise involved. The case eventually found its way to the U.S. Supreme Court on the question of the validity of the compulsory production of the evidence. Holding the coerced production to be in violation of the Fourth and Fifth Amendments, the high Court condensed its comprehensive opinion in the following succinct statement:
"The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employes of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offence; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offense,  it is the invasion of this sacred right which underlies and constitutes the essence of Lord CAMDEN's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods, is within the condemnation of that judgment. In this regard the Fourth and Fifth Amendments run almost into each other. * * *
Though the proceeding in question is divested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their substance and essence, and effects their substantial purpose. It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction *509 deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be obsta principiis."
In Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652, the U.S. Supreme Court considered the validity of a grand jury subpoena duces tecum under the Fourth and Fifth Amendments. The documents called for were set forth in the subpoena with far more particularity than the general description contained in the subpoenas involved in the case here. (Id. 201 U.S. 45, 26 S.Ct. 370.) The subpoena duces tecum was issued to Hale commanding production of the papers described, but Hale, after appearing before the grand jury in response thereto, refused compliance therewith, resulting in his being held in contempt of Court. By writ of habeas corpus, the constitutional questions came before the high Court. The subpoena was held to be in violation of both constitutional amendments. We quote briefly from the opinion (Id. 201 U.S. 76, 26 S.Ct. 380):
"While a search ordinarily implies a quest by an officer of the law, and a seizure contemplates a forcible dispossession of the owner, still, as was held in the Boyd case, the substance of the offense is the compulsory production of private papers, whether under a search warrant or a subpeona duces tecum, against which the person, be he individual or corporation, is entitled to protection. Applying the test of reasonableness to the present case, we think the subpoena duces tecum is far too sweeping in its terms to be regarded as reasonable. It does not require the production of a single contract, or of contracts with a particular corporation, or a limited number of documents, but all understandings, contracts, or correspondence between the MacAndrews & Forbes Company, and no less than six different companies, as well as all reports made, and accounts rendered by such companies from the date of the organization of the MacAndrews & Forbes Company, as well as all letters received by that company since its organization from more than a dozen different companies, situated in seven different States in the Union.
If the writ had required the production of all the books, papers and documents found in the office of the MacAndrews & Forbes Company, it would scarcely be more universal in its operation, or more completely put a stop to the business of that company. Indeed, it is difficult to say how its business could be carried on after it had been denuded of this mass of material, which is not shown to be necessary in the prosecution of this case, and is clearly in violation of the general principle of law with regard to the particularity required in the description of documents necessary to a search warrant or subpoena. Doubtless many, if not all, of these documents may ultimately be required, but some necessity should be shown, either from an examination of the witnesses orally, or from the known transactions of these companies with the other companies implicated, or some evidence of their materiality produced, to justify an order for the production of such a mass of papers. A general subpoena of this description is equally indefensible as a search warrant would be if couched in similar terms. Ex parte Brown, 72 Mo. 83; Shaftsbury v. Arrowsmith, 4 Ves. 66; Lee v. Angas, L.R. 2 Eq. 59."
The case of Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, is another judicial landmark under the Fourth and Fifth Amendments. That opinion, written by Mr. Justice Holmes, has been repeatedly cited as a fountainhead of authority. In *510 that case the Federal Trade Commission attempted by writs of mandamus to coerce production of certain records and correspondence from the tobacco companies. The Commission proceeded in accordance with an Act of Congress which authorized such investigations as part of its duties thereunder. The Act was designed to prevent the use of unfair methods of competition in commerce and the investigation was in furtherance of such purpose. In addition to the Act itself, the United States Senate passed a resolution specifically authorizing the particular investigation and directing the Commission to proceed. Thus bulwarked by the two sources of Congressional authority, the Commission filed its petitions alleging the specific grounds of complaints made to it as to alleged unfair practices of the companies, and prayed writs commanding the production of certain letters and telegrams of the tobacco companies which had been sent to, or received from, their jobber customers and other associations and corporations named. The opinion says (Id. 264 U.S. 306, 44 S.Ct. 337):
"It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up. The unwillingness of this Court to sustain such a claim is shown in Harriman v. Interstate Commerce Commission, 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253, and as to correspondence, even in the case of a common carrier, in United States v. Louisville & Nashville R.R. Co., 236 U.S. 318, 335, 35 S.Ct. 363, 59 L.Ed. 598. * * * A general subpoena in the form of these petitions would be bad."
The foregoing cases from the highest judicial authority hold the use of subpoenas duces tecum to be analogous to the use of search warrants. The law has always surrounded such search warrants with the strictest safeguards, under both Federal law and State law. Thus, under Rule 41(c), Federal Rules of Criminal Procedure, a search is permitted only after issuance of a search warrant by a judge or commissioner "identifying the property", among other things. And our State Statutes, F.S. § 933.04 F.S.A., provides that "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated and no search warrant shall be issued except upon probable cause, supported by oath or affirmation particularly describing the place to be searched and the person and thing to be seized".
If, as stated in the foregoing cases, a subpoena duces tecum is analogous to a search warrant under the Fourth and Fifth Amendments and is governed by the same principles of law, can it reasonably be said that in the subpoenas duces tecum in the case sub judice the papers, records and documents are "particularly described"?
The subpoenas purport to command seven different persons who are officers of two separate corporations, to bring and produce before the State Attorney "any and all records of and pertaining to said corporation[s], including but not limited to bank records, ledger slips, deposit slips, minute books, stock books, general ledger, accounting ledger, cash disbursements ledger, salary sheets, invoices, paid receipts, sales records, manifests and correspondences, from date of inception of corporation[s] up to and including the present date"  in other words, every book, document, paper and record pertaining to the said two corporations. Nothing could be more general than this description of the things to be produced. It could have quite easily been put into more succinct words: "Just bring in the works  the whole works".
The Court has inherent power to issue a subpoena duces tecum in a proper case. While the exercise of such power is not necessarily precluded by organic provisions forbidding unreasonable searches and seizures or compulsory self-incrimination, both the Federal and State Constitutions *511 require that the forced production of documents by subpoena be not unreasonable and the production of records may not be required under such circumstances as to contravene such constitutional provisions. 97 C.J.S. Witnesses § 25b, p. 377.
Process by subpoena duces tecum may not be utilized primarily for purpose of discovery, either to ascertain the existence of documentary evidence, or to supply the facts needed for litigation, nor can it be employed for a mere "fishing expedition", or general inquisitorial examination of books, papers, or records, with a view to ascertaining whether something of value may not show up therefrom, or merely to gratify curiosity, or for the information of the public. 97 C.J.S. Witnesses § 25e, p. 382.
A subpoena duces tecum may not lawfully require the production of a mass of books and papers, merely so that one may search through them to gather evidence; and an omnibus subpoena for all, or even a substantial part, of the books or records of the subpoenaed party is invalid. 97 C.J.S. Witnesses § 25h, p. 391. Such a subpoena which is unreasonable and oppressive violates the constitutional guaranty, as where it is of too broad and sweeping a character. Hence, the books and papers of which production is compelled must be specifically described so that they may be identified and the information sought indicated. 79 C.J.S. Searches and Seizures § 36, p. 802.
We have hereinbefore approved the holding in State v. Mitchell as to the broad duties and responsibilities of the State Attorney. We here reiterate such approval, with the sole qualification likewise contained in Mitchell:
"The vigor of the state attorney in the use of the processes of the court should be sustained and commended in all instances except where the rights of others are impaired or denied." (Emphasis supplied).
The omnibus character of the subpoenas duces tecum here involved clearly categorizes them as being violative of the constitutional guaranties hereinbefore discussed, and they should therefore be quashed. Accordingly, the writ of certiorari is issued, with directions that the motion to quash the subpoenas involved be granted.
LILES, A.C.J., and MANN, J., concur.
NOTES
[1] In all, eight supoenas duces tecum were served upon the seven petitioners. One of petitioners, Thelma Imparato, was served as an official of both corporations mentioned, infra.
[2] Where necessary to hereinafter refer to these provisions we will refer only to the Fourth Amendment and Fifth Amendment, but it will be understood that such reference will include their respective State Constitutional counterparts.