478 So.2d 38 (1985)
Nathaniel DEAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 63711.
Supreme Court of Florida.
October 31, 1985.
*39 Bennett Brummer, Public Defender, and Michael A. Rosen, Sp. Asst. Public Defender, Eleventh Judicial Circuit, Miami, for petitioner.
Jim Smith, Atty. Gen. and Carolyn M. Snurkowski, Bureau Chief, Asst. Atty. Gen., Miami, for respondent.
ADKINS Justice.
We have been asked to review Dean v. State, 430 So.2d 491 (Fla. 3d DCA 1983), which expressly and directly conflicts with prior decisions of other district courts of appeal and this Court. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Petitioner Nathaniel Dean was president of Edison Little River Self-Help Community Council, Inc., a non-profit corporation. He and a co-defendant, Nimrod Harmon, treasurer of the same corporation, were charged by information with one count of conspiracy to commit grand larceny and thirty-eight counts of grand larceny. The state alleged in the information that petitioner and Harmon conspired to and appropriated sums of money from the corporation for petitioner's personal, family, or private business use. Petitioner went to trial and was subsequently convicted and sentenced on thirty counts of conspiracy and grand larceny.
On appeal to the Third District Court of Appeal, petitioner argued: first, that the trial court committed reversible error in refusing to allow his counsel the right to make the concluding argument before the jury as required by Florida Rule of Criminal Procedure 3.250; second, that the trial court committed reversible error in denying his motion for severance of defendants; third, that the trial court committed reversible error in denying, on the grounds of untimeliness, a particular requested jury instruction; and finally, that the trial court committed reversible error in denying his pre-trial motion to suppress certain evidence obtained pursuant to a subpoena duces tecum. The district court affirmed petitioner's conviction and sentence, finding no merit to any of these arguments. Petitioner has abandoned his third point on appeal in his petition to this Court. However, of the three remaining points on appeal, we hold that one has merit. Therefore, for the reasons expressed below, we remand to the Third District Court of Appeal for further remand to the trial court for a proper evidentiary hearing on petitioner's motion to suppress.
Petitioner Dean became the target of a criminal investigation for misappropriation of corporate funds in 1977. On November 7, 1977, a Dade County police officer served a subpoena to produce documents on the corporation. The subpoena, styled "State of Florida vs. Nathaniel Dean and Nimrod Harmon, Investigation Witness Subpoena Duces Tecum," commanded the custodian of records to produce:

*40 All books and all records of Edison Little River Self-Help Community Council, a corporation, from January 1, 1975, through October 31, 1977, including general ledgers, accounts receivable ledgers, check stubs, cancelled checks, bank statements, receipts, invoices, all other records and documents, correspondence and memos relating to receipt of money, property and funds from Dade County, Florida, or any agency of the U.S. Government or State of Florida, directly or indirectly, and the disbursements or expenditures of said funds during the aforesaid time period.
After serving the subpoena on an employee of the corporation, the police officers immediately seized the documents named in the subpoena, as well as others that were not covered by the subpoena. At that point, two Dade County auditors who accompanied the police officers to the corporate offices transported the documents to the office of a government auditor, then eventually to the state attorney's office.
Prior to trial, petitioner timely filed a motion to suppress the evidence seized pursuant to the state's investigative subpoena as well as the other documents and statements which the state obtained as a result of examining the seized records. At a pre-trial hearing on petitioner's motion, the trial court, without conducting an evidentiary hearing, denied petitioner's motion and ruled summarily that petitioner, as a corporate officer, lacked standing to contest a seizure of corporate records. The district court affirmed the ruling of the trial court on standing because, inter alia, petitioner based his argument below solely on the fact that his standing derived from his position as sole executive officer of the non-profit corporation against which the subpoena was issued. Petitioner argues in his brief to this Court that he does have standing based upon our decision in State v. Tsavaris, 394 So.2d 418 (Fla. 1981). In Tsavaris certain office records of Dr. Tsavaris were obtained pursuant to a subpoena duces tecum served upon Dr. Tsavaris' full-time secretary. Dr. Tsavaris had argued to the district court that the state attorney had obtained the subpoenaed office records in violation of his right to be free from unreasonable searches and seizures. He further contended that the records should be suppressed because the subpoenas were defective and improperly served.
In determining whether Dr. Tsavaris was entitled to claim the protection of the exclusionary rule with regard to these subpoenaed records, the district court relied on the concept of "standing." This Court likewise considered standing as a separate inquiry from the defendant's substantive claim of fourth amendment violation. Initially, we held that "[a]lthough Tsavaris did not have standing to challenge the form or service of process of the subpoenas, he did have standing to object to the subpoenas on the basis that they violated his fourth amendment rights." 394 So.2d at 425. We then traced the development of the United States Supreme Court's position on the application of the fourth amendment to a subpoena duces tecum and concluded that:
The use of a properly limited subpoena does not constitute an unreasonable search and seizure under the fourth amendment. All that is required is that the subpoenaed materials be relevant to the investigation being conducted and that the subpoena not be overly broad or burdensome. A proper subpoena is one that is properly limited in scope, relevant in purpose, and specific in directive so that compliance will not be unduly burdensome.
Id. at 426-27.
In Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court discarded reliance on concepts of "standing" in determining whether a defendant is entitled to claim the protections of the exclusionary rule. The inquiry, after Rakas, is simply whether the defendant's rights were violated by the allegedly illegal search or seizure. United States v. Salvucci, 448 U.S. 83, 87 n. 4, 100 S.Ct. 2547, 2551 n. 4, 65 L.Ed.2d 619 (1980).
*41 We did not adopt the single-treatment analysis expoused by the United States Supreme Court in Rakas in Tsavaris. As noted above, we regarded standing separately. However, in today's decision, we do adopt the Rakas analysis. We hold that the determination of whether the proponent of a motion to suppress is entitled to contest the legality of a search and seizure must take into consideration the substantive fourth amendment issues as well as the concept of standing. In so holding, we recede from that portion of Tsavaris treating standing as a separate inquiry to be determined before the substantive fourth amendment issues. This conformity with the United States Supreme Court on this issue is particularly appropriate in light of the amendment to Article I, section 12, Florida Constitution, adopted after the Tsavaris decision in 1982, which mandates that the right against unreasonable searches and seizures "shall be construed in conformity with the fourth amendment to the United States Constitution, as interpreted by the United States Supreme Court."
When considering petitioner Dean's fourth amendment claim under this analysis, his reliance on Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), is not misplaced. In Mancusi, a subpoena duces tecum was served on a union local officer, calling upon it to produce certain union books and records. Upon noncompliance with the subpoena, the state officials searched the offices and seized the named records. DeForte, the vice president of the union, objected to the admission of these corporate records against him individually. The office from which the records were seized was one large room which DeForte shared with other union officials. The record did not show from what part of the office the records were taken, and DeForte did not claim that it was a part reserved for his exclusive personal use. The parties stipulated that DeForte spent a "considerable amount of time" in the office, and that he had custody of the papers at the moment of their seizure.
Upon these facts, the United States Supreme Court held that DeForte had standing to object to the seizure of the documents because he had a "reasonable expectation of freedom from governmental intrusion" in the union office.
Although the United States Supreme Court has subsequently held in Rakas that the separate question of standing is "more properly subsumed under substantive Fourth Amendment doctrine," the holding in Mancusi is still intact. The Supreme Court noted that had they earlier decided that the question of standing was properly a substantive fourth amendment analysis, "we can think of no decided cases of this Court that would have come out differently." Rakas, 439 U.S. at 139, 99 S.Ct. at 428.
In a footnote, the Court compared Mancusi, where the Court first considered the standing question, with Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), where the Court first focused on substantive fourth amendment law, and concluded, "[i]n both cases, however, the first inquiry was much the same." Id. 439 U.S. at 139 n. 7, 99 S.Ct. at 428 n. 7.
In Tsavaris we approved the use of a subpoena duces tecum in a criminal investigation. However, in order not to run afoul of the protections of the fourth amendment, the issuance, service, and execution of the subpoena must be proper. The subpoena must not be "too sweeping in its terms `to be regarded as reasonable.'" Hale v. Henkel, 201 U.S. 43, 76, 26 S.Ct. 370, 379, 50 L.Ed. 652 (1906). The fourth amendment protects "against subpoenas which suffer from `too much indefiniteness or breadth in the things to be "particularly described,"' Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 208 [66 S.Ct. 494, 505, 90 L.Ed. 614] (1946)... ." Fisher v. United States, 425 U.S. 391, 401, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976). In other words, an unlawful warrantless search and seizure will not be sanctioned under the guise of a subpoena duces tecum.
*42 We held in Tsavaris that the use of the subpoena duces tecum there did not violate the fourth amendment. There were features of the Tsavaris subpoena, however, that distinguish it from the instant case. One subpoena in Tsavaris directed that the custodian of records bring with her the medical records of one particular patient. The other subpoena directed the custodian to bring with her the personal appointment book of Dr. Tsavaris for the month of April, 1975. These subpoenas were not particularly overbroad. In contrast, the subpoena in the instant case directed the custodian to bring in all the corporate records for a two-year period. Additionally, there was an opportunity in Tsavaris to oppose the subpoena before production of the documents. As we noted in Tsavaris, this is an extremely important feature of a subpoena duces tecum  one that might otherwise save it from being a warrantless search and seizure:
Subpoenas duces tecum are different from search warrants and are indisputably less intrusive. While there is no opportunity to challenge a search warrant, a subpoena duces tecum is subject to a motion to quash prior to the production of the requested materials. While a search warrant may involve the police rummaging through one's belongings and may involve the threat or actual use of force, a subpoena duces tecum requires the subpoenaed person to bring the materials sought at a time and place described in the subpoena.
394 So.2d at 427 (citations omitted).
Here, the subpoena was served upon someone who was not the custodian of records, and immediately thereafter the state officials searched the corporate offices and seized the corporate records, some that were not even covered by the subpoena. There was no opportunity to oppose the subpoena by filing a motion to quash. These methods cannot be condoned. A subpoena duces tecum is not a substitute for a search warrant, nor may its use be a subterfuge for a warrantless search and seizure. As stated by the First District Court of Appeal in State v. Hayes, 305 So.2d 819 (Fla. 1st DCA 1975):
To quote from State ex rel. Martin v. Mitchell [Michell] 188 So.2d 684 (Fla. DCA, 1966), as quoted in Imparato v. Spicola, 238 So.2d 503, 511 (Fla. DCA 1970), "The vigor of the State Attorney in the use of the process of the court should be sustained and commended in all instances except where the rights of others are impaired or denied." (Emphasis supplied). The rights of others have been impaired and denied in the issuance of this subpoena duces tecum. See Imparato v. Spicola, supra, and Mancusi v. DeForte, 329 [392] U.S. 364, 20 L.Ed.2d 1154, 88 S.Ct. 2120 (1968).
In conclusion, we recede from our holding in Tsavaris that standing is a separate question to be decided apart from a substantive fourth amendment claim. We remand this case to the district court for further remand to the trial court in order to conduct a proper evidentiary hearing on petitioner's motion to suppress. At this hearing, petitioner should be allowed to show facts which would prove that he had a reasonable expectation of privacy in the corporate offices searched. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
Petitioner's second point on appeal to this Court concerns whether the trial judge committed reversible error in denying petitioner's motion for severance in order to obtain separate trials for himself and his co-defendant Nimrod Harmon. Florida Rule of Criminal Procedure 3.152(b) provides:
(1) On motion of the State or a defendant, the court shall order a severance of defendants and separate trials:
(i) before trial, upon a showing that such order is necessary to protect a defendant's right to a speedy trial, or is appropriate to promote a fair determination of the guilt or innocence of one or more defendants; or
(ii) during trial, only with defendant's consent and upon a showing that such order is necessary to achieve a fair *43 determination of the guilt or innocence of one or more defendants.
The district court concluded that the trial judge had not abused her discretion in denying the motion for severance because "[t]he evidence of guilt against the defendant Dean was so overwhelming that his otherwise proper joinder with the co-defendant Harmon under Florida Rule of Criminal Procedure 3.150(b) could have had no real impact on the outcome of this case and, therefore, a severance of defendants was not called for under Fla.R.Crim.P. 3.152(b)." 430 So.2d at 492.
Petitioner argues that the trial judge should have granted his motion for severance because 1) his co-defendant sought to place the blame for the alleged crimes on petitioner; 2) the co-defendant testified in his own defense and petitioner did not testify; and 3) petitioner had no opportunity to rebut the co-defendant's final argument. He relies on this Court's decision in Crum v. State, 398 So.2d 810 (Fla. 1981), to support his position that his motion for severance should have been granted.
Petitioner, however, overlooks our decision in McCray v. State, 416 So.2d 804 (Fla. 1982). In that case, the petitioner argued, as here, that his motion for severance under Florida Rule of Criminal Procedure 3.152(b)(1) should have been granted because the defenses of his codefendants were completely antagonistic to his defense. The state argued that severance is not required simply because one defendant is blaming another for the crime and, the state claimed that there was no prejudice since, even without the co-defendant's testimony, the evidence of appellant's guilt was overwhelming. 416 So.2d at 806.
We held that the trial judge correctly denied the motion for severance. Noting that whether to sever should be determined on a case by case basis, we then set forth some general guidelines for determining whether severance is proper:
Specifically, the fact that the defendant might have a better chance of acquittal or a strategic advantage if tried separately does not establish the right to a severance. Nor is hostility among defendants, or an attempt by one defendant to escape punishment by throwing the blame on a codefendant, a sufficient reason, by itself, to require severance.
Id. (citations omitted).
Petitioner in that case had also relied on Crum to support his argument that a severance was required. We distinguished Crum in the following manner:
In that case, two brothers, Preston and Marvin Crum, were charged with murder. Prior to trial, counsel for appellant Preston obtained a statement from codefendant Marvin which was in total accord with Preston's version of the incident. After the jury was sworn, Preston learned that Marvin had changed his story and intended to accuse Preston, at trial, of committing the murder. Marvin was not required to give the statement, but once he did so, Preston was entitled to rely on that statement. When codefendant Marvin changed his story after the jury was sworn, we determined that, on a proper motion, severance was necessary because Preston was, under these circumstances, denied a fair trial.
The problem in Crum was not simply that the codefendants had antagonistic defenses. The problem was that one codefendant induced the other to believe that their defenses would be completely consistent and then, after jeopardy attached, decided to change his story, thereby prejudicing the proper preparation of the case for trial. The circumstances would have been different had there been no prior statement or had there been sufficient notice before trial of the change in Marvin's position.
Id. at 807 (emphasis supplied). Crum is distinguishable from the instant case for the same reasons.
Petitioner's second and third reasons for demanding a severance, i.e., the co-defendant testified in his own defense and petitioner did not testify and petitioner had no *44 opportunity to rebut the co-defendant's final argument, are also unpersuasive. Petitioner's decision not to testify was exclusively his own, and we said in McCray, the fact that one defendant might have a strategic advantage if tried separately, does not necessitate a severance. 416 So.2d at 806. Further, although petitioner may not have had the opportunity to rebut the co-defendant's final argument, he did have the opportunity to cross-examine his co-defendant when he was on the stand, "thus affording the jury access to all relevant facts." Id. We hold that the trial judge was within his discretion when he denied the motion for severance.
Finally, we find petitioner's argument that he was not allowed to make the concluding argument before the jury as required by Florida Rule of Criminal Procedure 3.250 unconvincing. The record shows that petitioner's counsel opened final argument. Counsel for the co-defendant followed with his final argument. Upon the conclusion of co-defendant's argument, the prosecutor stood up in open court, before the jury and asserted, "I think I can save the court some time. The evidence speaks for itself. We rest." The trial court concluded that this did not constitute final argument on the part of the state, and the district court affirmed. We agree. In Menard v. State, 427 So.2d 399 (Fla. 4th DCA), cert. denied, 434 So.2d 888 (1983), the fourth district court, when faced with a similar situation, stated:
Every now and again, in the tragic world of criminal appeals, comes a case that brings involuntary smile to otherwise grim lips. This is one of those, though it cannot be expected to afford any amusement to the defendant."
At the end of the initial final argument presented by the defense, the State's entire response was:
The State of Florida is going to rely on the evidence and testimony before the court and juror's common sense, and we will waive our argument.
The defense, discomforted by this tactic, pressed for the right to conclude on the basis that the comment "relying on the evidence and common sense" did not constitute a waiver and actually was final argument. (Cite omitted). We disagree. The remark did [not] address the evidence in particular nor any other testimony. Nor did they dwell unnecessarily on the level of intelligent consideration to be extended by the jury. Moreover, unlike the discourse in Andrews [v. State, 99 Fla. 1350, 129 So. 771 (Fla. 1930)], supra, the comments were but a very few words and in our opinion did not rise to the level of final argument.
427 So.2d at 400.
Similarly, the prosecution's waiver of final argument in the instant case provided no reason for defense counsel's further argument to the jury. Accordingly, we hold there was no error in the instant case.
The portion of the district court's opinion affirming the order denying the motion to suppress is quashed and this cause is remanded with instructions to further remand same to the trial court for the purpose of a proper evidentiary hearing so that defendant may have an opportunity to prove that he had a reasonable expectation of privacy in the corporate offices searched.
It is so ordered.
BOYD, C.J., and EHRLICH and SHAW, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion in which OVERTON, J., concurs.
McDONALD, Justice, concurring in part and dissenting in part.
I concur with the majority opinion except on one point. I cannot agree with the view expressed in the majority opinion that Dean had any right to challenge the search and seizure of corporate records from Edison Little River Self-Help Community Council, Inc. Therefore, I would approve the district court decision in all respects.
Edison Little River Self-Help Community Council, Inc., operated job training and other *45 social service programs for low-income residents of the Miami area. This nonprofit corporation received its program funding from federal, state, and local governmental agencies, plus grants from the Rockefeller Foundation. While serving as president of Edison Little River, Dean diverted thousands of dollars of these public and private funds, intended to aid needy persons, from corporate bank accounts and used them for his own business and personal purposes. The subpoena duces tecum sought the books and records of Edison Little River, not Dean's personal records. The corporation, which could object to any improper use of the subpoena, had no reason to object to a search and seizure aimed at stopping the improper flow of funds out of the corporate bank accounts. Dean must show a violation of his own rights before he may challenge the subpoena. I do not believe he can make such a showing under the facts in this case.
The majority relies on Mancusi v. De Forte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), in remanding for an evidentiary hearing on whether Dean had a reasonable expectation of privacy in the corporate offices sufficient for suppression of the corporate records seized. I find that reliance misplaced. In Mancusi police officers served a subpoena duces tecum on a union local for certain union records. The union refused to comply with the subpoena. The police proceeded to seize the records from an office shared by the defendant, who protested the seizure, and other union officials. The state used these records in its prosecution and conviction of the defendant for using his union office to extort money from juke box owners. The United States Supreme Court held that the defendant could object to admission of the union records at trial because he had a reasonable expectation of privacy in those records, which were in his custody when seized from his shared office at the union local.
A defendant corporate official seeking suppression of corporate records or property under Mancusi, however, must show "a demonstrated nexus between the area searched and the work space of the defendant." United States v. Britt, 508 F.2d 1052, 1056 (5th Cir.), cert. denied, 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 42 (1975). Dean cannot meet the Britt test, and this case is distinguishable from Mancusi. Dean never claimed that the records were either his personal records or corporate records in his custody. Moreover, the corporate records were seized from the corporate finance department and the office of co-defendant Harmon Nimrod, not from Dean's office. Any expectation of privacy Dean may have had in the corporate records seized was unreasonable.
I agree with the majority's statement that a subpoena duces tecum is not a substitute for a search warrant, nor may its use be a subterfuge for a warrantless search and seizure. That principle, however, is not applicable in this case. I do not agree that State v. Tsvaris, 394 So.2d 418 (Fla. 1981), should be modified. Whether the issue is called standing or a reasonable expectation of privacy, Dean had neither. The trial court and the district court correctly held that Dean had no right to contest the seizure of records from the nonprofit corporation whose funds he was accused of stealing over an extended period of time. These corporate records were also subject to examination or audit by the federal, state, and local agencies which funded the corporation  further weakening Dean's argument. If there is an evidentiary hearing, I am sure the trial court will apply Mancusi and Britt to the facts of this case and reject Dean's challenge to the search and seizure here. Therefore, I see no reason to remand for such a hearing.
OVERTON, J., concurs.