802 So.2d 1141 (2001)
STATE of Florida, Petitioner,
v.
INVESTIGATION, Respondent.
No. 2D00-4034.
District Court of Appeal of Florida, Second District.
July 6, 2001.
Rehearing Denied August 29, 2001.
*1142 Robert A. Butterworth, Attorney General, Tallahassee, and Wendy Buffington, Assistant Attorney General, Tampa, for Petitioner.
John W. Persse, Sarasota, for Respondent.
PARKER, Acting Chief Judge.
The State of Florida filed a petition for certiorari seeking review of the trial court's order quashing its subpoena duces tecum that sought bank records pertaining to the client trust account of attorney John W. Persse. Because the subpoena was properly issued as part of an investigation into possible criminal activity and because the records at issue are not protected by attorney-client privilege, we grant the State's petition and quash the trial court's order.[1]
Prior to issuing the subpoena, the State Attorney's Office began conducting an investigation into possible charges of exploitation of the elderly against Terrence McDonough. The State had received information which led it to believe that funds received by McDonough from *1143 seventy-three-year-old Babette Holmes had been taken through either fraud or exploitation. The State obtained evidence that hundreds of thousands of dollars worth of checks had been written on Holmes's personal bank account to McDonough, a real estate agent who had earned only approximately $10,000 over the preceding four to five years from his real estate business. In addition, the State obtained evidence that several parcels of valuable property had been transferred from Holmes to McDonough by quitclaim deed using Persse's services. The State also found that insurance checks, directed to Holmes's guardian and intended to pay Holmes's bills, had been intercepted by McDonough and deposited into his personal account. Finally, the State had evidence that McDonough had obtained three checks totaling $46,000 from Holmes while hearings on her guardianship were pending and that these checks had been deposited into Persse's client trust account. Based on this information, the State issued a subpoena duces tecum to Harris Trust/Bank of Montreal for Persse's client trust account records to determine whether the $46,000 was still in the account and, if not, what had happened to it. The State also sought to determine through these records whether McDonough had used Persse's client trust account to launder other funds received from Holmes.
Persse learned of the State's subpoena and filed a petition for writ of prohibition in the trial court, arguing that the State's subpoena was not authorized, that the subpoena sought irrelevant and immaterial information, and that the records at issue were protected from disclosure by the attorney-client privilege. The trial court treated Persse's petition as a motion to quash the subpoena. At an initial hearing, the trial court questioned the State's authority to issue an investigative subpoena duces tecum. The trial court then held that the State had the burden to prove that the records it sought were relevant and material to its investigation. Because the State had not done so, the trial court granted the motion to quash.
The State then filed a motion for rehearing, offering to present evidence concerning the relevance and materiality of the records and providing authority to the trial court for its right to issue the subpoena. At the rehearing, the State had its investigator testify as to the details of the ongoing investigation, the identity of the investigation's targets, the State's theories supporting the investigation, and the specific reasons why Persse's client trust account records were needed. Persse argued that the State had not established that any criminal activity had occurred and therefore had failed to prove that his client trust account records were relevant or material. He also renewed his argument that even if the records were relevant, they could not be disclosed because they were protected by attorney-client privilege. After hearing the State's evidence and the arguments of both parties, the trial court found that the attorney-client privilege applied to the records and that, because the State had not established that any crime had been committed, the State had not shown a sufficiently compelling interest in the records to overcome the privilege. Based on these findings, the trial court denied the State's motion for rehearing. The State then filed a petition for writ of certiorari with this court. We conclude that the trial court's order departs from the essential requirements of the law in two respects and therefore grant the petition.
As an initial matter, the State does have the authority to issue an investigative subpoena duces tecum. The courts of this *1144 state have repeatedly held that the state attorney acts as a one-person grand jury in carrying out investigations into noncapital criminal conduct, and the state attorney must be granted reasonable latitude in that role. Doe v. State, 634 So.2d 613, 615 (Fla.1994); Imparato v. Spicola, 238 So.2d 503, 506 (Fla. 2d DCA 1970); State v. Nat'l Research Sys., Inc., 459 So.2d 1134, 1135 (Fla. 3d DCA 1984); Op. Att'y Gen. Fla. 94-86 (1994). In addition, section 27.04, Florida Statutes (2000), allows the state attorney to issue subpoenas duces tecum for records as part of an ongoing investigation. Imparato, 238 So.2d at 506; Nat'l Research Sys., 459 So.2d at 1135. Therefore, the State clearly had the authority to issue the investigative subpoena in this case.
Turning to the merits of the case, this court has already rejected the argument that the State must establish the materiality or relevance of the information it seeks as part of an ongoing investigation into possible criminal activity. Imparato, 238 So.2d at 507. In Imparato, the State served subpoenas duces tecum on various corporate officials, seeking all books, records, and documents of the corporation as part of an investigation into organized crime. Id. at 505. The officials moved to quash the subpoenas, arguing in part that the State had failed to establish that the requested records were material or relevant to an existing or anticipated investigation. Id. at 507. In rejecting this argument, this court stated:
In light of the fact that the subpoenas were issued at the specific direction of the State Attorney in connection with a presumably lawful investigation he was making in his official capacity, no such showing was necessary.... Even as the grand jury is immune from the requirement of showing materiality in compelling production of testimony and documentary evidence it desires, so is the State Attorney in his official sphere.
Id. See also In re Slaughter, 694 F.2d 1258, 1260 (11th Cir.1982) (holding that a showing of relevance is not required when the grand jury issues an investigative subpoena); Winfield v. Div. of Pari-Mutuel Wagering, 477 So.2d 544, 548 (Fla.1985) (holding that the State is in the best position to determine what material is relevant to an ongoing investigation and what the proper scope of an investigative subpoena should be).
A requirement that the State establish the relevancy and materiality of the information it sought by way of an investigative subpoena would unreasonably impede the state attorney's ability to conduct investigations into criminal activity. The purpose of an investigative subpoena is to allow the State to obtain the information necessary to determine whether criminal activity has occurred or is occurring. To require the State to prove that the information it seeks is both relevant and material to its investigation is to require the State to explain the purpose and targets of its investigation before that investigation is complete. The State should not be required to tip its hand in this manner. Further, the State cannot be required to prove that a crime has occurred before it can issue an investigative subpoena because the entire purpose of the investigative subpoena is to determine whether a crime occurred. To require the State to prove that a crime occurred before it can issue an investigative subpoena puts the State in an impossible catch-22.
In this case, the trial court initially quashed the State's investigative subpoena because the State had failed to prove the relevance and materiality of the information sought. On rehearing, the trial court reaffirmed that decision because the State had not proved that any crime had been *1145 committed. Because the State was not legally required to prove either in order to have its subpoena enforced, the trial court misapplied the law and its order quashing the subpoena must itself be quashed.
Persse argues that, regardless of the trial court's erroneous proof requirements, the trial court correctly quashed the subpoena because his client trust account records are protected from disclosure by the attorney-client privilege. This argument has no merit because the attorney-client privilege does not cover the subpoenaed records in this case. The records at issue are those of a third party-the bank. Information in the hands of a third party is not covered by the attorney-client privilege. Had the State's subpoena sought client trust account records directly from Persse, we might have to examine the issue more carefully. Here, however, when the subpoena is directed to a third party for records held by the third party, the attorney-client privilege is inapplicable. Therefore, the trial court departed from the essential requirements of the law in finding that the attorney-client privilege barred the State from obtaining the client trust account records at issue in this case.
While we need not decide this case on this issue, we also note that there is authority for the proposition that information concerning attorney's fees and payment records is simply not covered by the attorney-client privilege. In re Grand Jury Subpoena, 204 F.3d 516, 520 (4th Cir.2000) (holding that the identity of the client, the amount of the fee, and the identification of payment by case file name are not protected from disclosure by the attorney-client privilege); In re Slaughter, 694 F.2d at 1260 (holding that matters involving the receipt of fees from a client are not generally privileged); The Florida Bar v. Huggett, 626 So.2d 1304 (Fla.1991) (noting that the attorney-client privilege is not implicated by office bank account records); Eastern Air Lines, Inc. v. Gellert, 431 So.2d 329, 331 (Fla. 3d DCA 1983) (holding that records of payments made by clients are not covered by the attorney-client privilege); Ashcraft v. Harvey, 315 So.2d 530, 531 (Fla. 4th DCA 1975) (holding that attorney's trust account records concerning payments by clients are not covered by attorney-client privilege).
Persse also argues that general privacy principles show that the scope of the State's subpoena is too broad. While this argument has some appeal, it is not supported by the law of this state. It is true that a citizen has a legitimate expectation of privacy in financial institution records; however, that privacy interest must yield to a compelling governmental interest. Winfield, 477 So.2d at 548. Generally, the State's interest in conducting effective investigations into criminal activity is a compelling governmental interest. Id. Further, in order to ensure that the State has the information necessary for a complete investigation, the State, rather than the citizen or the bank, must be the one to determine the scope of the privacy interest that must yield. Id. In this case, the privacy interests of Persse's clients must yield to the State's interest in investigating possible criminal activity apparently conducted, in part, through Persse's client trust account.[2]
Because the trial court departed from the essential requirements of the law by *1146 requiring the State to prove that the records it sought were relevant and material to an actual crime that had occurred and by finding the attorney-client privilege applicable to the records of a third party, we grant the State's petition for writ of certiorari.
Petition for certiorari granted.
FULMER, J., Concurs.
SILBERMAN, J., Concurs specially.
SILBERMAN, Judge, Concurring.
I agree that the State is entitled to the requested relief; however, the State's authority to issue an investigative subpoena is not unlimited. While the State is not required to establish the relevance and materiality of the information which is sought pursuant to an investigative subpoena, it is for the courts to determine whether the subpoena complies with the applicable legal limitations.
An investigative subpoena has the potential to violate the Constitution of the United States or the Florida Constitution. Imparato v. Spicola, 238 So.2d 503, 507 (Fla. 2d DCA 1970). As an example, "an unlawful warrantless search and seizure will not be sanctioned under the guise of a subpoena duces tecum." Dean v. State, 478 So.2d 38, 41 (Fla.1985). Moreover, a subpoena duces tecum which is used in a criminal investigation is subject to being quashed if it is overbroad or indefinite. Id. The subpoena may "not be exercised so as to defeat the discovery provisions of the Florida Rules of Criminal Procedure." State v. Barreiro, 432 So.2d 138, 140 (Fla. 3d DCA 1983).
Although the State Attorney is granted reasonable latitude in conducting investigations, upon proper motion the courts must determine the reasonableness of the subpoena. Imparato, 238 So.2d at 511; Barreiro, 432 So.2d at 140 n. 4. The record on appeal reflects that the State presented appropriate evidence to the trial court in support of the proposed subpoena. Because the subpoena was reasonable and does not appear to violate the applicable constitutional or other legal limitations, and for the other reasons expressed in the opinion of the majority, I concur.
NOTES
[1] The order quashing the State's investigative subpoena is properly reviewable by a petition for certiorari. State v. Doe, 592 So.2d 1121 (Fla. 2d DCA 1991); State v. Nat'l Research Sys., Inc., 459 So.2d 1134 (Fla. 3d DCA 1984). Therefore, this court has jurisdiction to hear this case.
[2] We point out that there is no evidence in the record before this court that Persse was involved in any possible criminal activity, and we do not mean to imply that Persse was knowingly laundering funds for McDonough. However, there is evidence that Persse's client trust account was used by McDonough to further or attempt to conceal possible criminal activity.